ELIZABETH SIMEONE and JOSEPH SIMEONE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Simeone v. Commissioner
Docket No. 10032-76.
United States Tax Court
T.C. Memo 1978-436; 1978 Tax Ct. Memo LEXIS 76; 37 T.C.M. (CCH) 1821; T.C.M. (RIA) 78436; November 2, 1978, Filed Elizabeth Simeone and Joseph Simeone, pro se. Michael A. Mayhall, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax for the taxable year 1975 in the amount of $ 3,178.20. The issues for our decision are: (1) Whether petitioners are entitled to an ordinary loss deduction in the amount of $ 14,675 for the taxable year in issue; (2) Whether petitioners are entitled *78 to an ordinary loss deduction in the amount of $ 12,000 due to their stock in their wholly owned corporation becoming worthless during the taxable year in issue; (3) Whether petitioners' loan of $ 6,775 made to their wholly owned corporation is a nonbusiness bad debt; and, (4) Whether $ 4,100 received by petitioners from their wholly owned corporation represents a reduction of their loans to the corporation. FINDINGS OF FACT Some of the facts were stipulated by the parties during the trial on the merits. The stipulation along with the exhibits corresponding to the stipulation are incorporated by this reference. Joseph Simeone and his wife, Elizabeth Simeone, (herein petitioners) resided at Union City, New Jersey at the time of filing their petition in the instant case. They timely filed their Federal joint income tax return for the taxable year 1975 with the Internal Revenue Service. On September 22, 1973, petitioners and Mr. Michael Soliman entered into a partnership agreement for the purpose of establishing a business related to the manufacture and sale of clothing. Petitioners paid $ 12,000 for their interest in the partnership. Under the partnership agreement *79 Mr. Soliman was responsible for the promotion of the business as well as the collection of money from various customers. Petitioners, primarily Mrs. Simeone, were responsible for the day-to-day operations concerning the production of garments. Petitioners and Mr. Soliman decided to incorporate their enterprise which was consummated on October 23, 1973, under the laws of the State of New Jersey. Following incorporation their enterprise was known as E & M Fashions, Inc. (herein E & M). Approximately one month after incorporation, petitioners discovered that Mr. Soliman had embezzled a substantial amount of money from E & M. Mr. Soliman effected the embezzlement by appropriating for his own personal use payments he collected from customers of E & M. During 1974 petitioners attempted to negotiate an arrangement with Mr. Soliman whereby Mr. Soliman would reimburse E & M for the amounts he embezzled. This proved to be unsatisfactory and E & M ceased to actively conduct business due to a lack of adequate financing. Mr. Soliman continued his criminal conduct by entering the premises of E & M and unlawfully removing and appropriating most of the machinery which was vital to the production *80 of garments. The theft of the machinery which was worth approximately $ 9,000 caused E & M to cease operating as an active corporation. During this same time Ms. Sherry Biddle, a co-conspirator of Mr. Soliman and employee of E & M, illegally appropriated a substantial amount of clothing from E & M. After charging certain advertising fees to the account of E & M she sold the clothing for her own benefit and to the exclusion of E & M. E & M incurred substantial debt during 1974 due to the activities of Ms. Biddle and Mr. Soliman. It did not have sufficient funds on hand to satisfy all the claims of its creditors and for this reason petitioners borrowed additional money which they deposited in the account of E & M. The money borrowed by petitioners allowed E & M to satisfy all of its creditors. During 1975 petitioners once again decided to enter the business of manufacturing and selling clothing. On February 28, 1975, petitioners organized Elizabeth and Joe Fashions, Inc., under the laws of the State of New Jersey (herein Fashions). Petitioners contributed $ 12,000 to Fashions in the form of machinery and money in return for which each petitioner received 50 percent of the capital *81 stock of Fashions. In addition to their capital contributions, petitioners lent Fashions $ 6,775 to meet operating expenses. Due to various factors Fashions proved to be unsuccessful and ceased operations during 1975. It sold its machinery and equipment used in the business at a price of $ 4,100 and recognized an ordinary loss of $ 9,245.45. Fashions then transferred the proceeds of the sale to petitioners. On their Federal joint income tax return for the taxable year in issue, 1975, petitioners reported an ordinary loss of $ 14,675. They computed the loss by taking the difference between the amount they received from Fashions' sale of machinery ($ 4,100) and the basis of their stock which they computed by adding their capital contributions ($ 12,000) and their loan to Fashions in the amount of $ 6,775 ($ 18,775 minus $ 4,100 equals $ 14,675). For the taxable year 1974, petitioners reported ordinary losses on their Federal joint income tax return and the basis for such losses related to the theft of E & M machinery and clothing as well as the debts of E & M which were satisfied with funds borrowed by petitioners and placed in the corporate account of E & M. The Commissioner *82 determined that the losses were capital in nature rather than ordinary and, therefore, proposed a deficiency for the taxable year 1974 in the amount of $ 3,196.29. On June 1, 1976, petitioners consented to an immediate assessment and collection of this amount ($ 3,196.29) with the understanding that they would not be able to contest the taxable year of 1974 before the United States Tax Court unless additional deficiencies were determined for that year. No additional deficiencies for the taxable year 1974 have been determined. The Commissioner, in his statutory notice of deficiency, determined that petitioners were not entitled to an ordinary loss in the amount of $ 14,675 for the reason that the loss was capital in nature. Accordingly, the Commissioner allowed petitioners a capital loss in the amount of $ 1,000 in determining their deficiency for the taxable year 1975. OPINION Petitioners first contend that they are entitled to an ordinary loss for the taxable year 1974. They argue that the Commissioner was in error when he determined that their reported loss for the taxable year 1974 was capital in nature rather than ordinary. Petitioners waived the restrictions on assessment *83 and collection of the proposed deficiency of the Commissioner for the taxable year 1974 and no statutory notice of deficiency was issued by the Commissioner for the taxable year 1974. Section 6212, Internal Revenue Code of 1954, [1] provides that if the Secretary or his delegate determines that there is a deficiency in respect of any tax imposed by subtitle A or B or chapter 42 or 43 of the Code, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail. Section 6213 provides that within a specified period (90 or 150 days) after the notice of deficiency authorized under section 6212 is mailed, the taxpayer may file a petition with this Court. For this Court to obtain jurisdiction a proper notice of deficiency must be mailed to that taxpayer. Izen v. Commissioner,64 T.C. 919 (1975). We, therefore, hold that we lack jurisdiction with respect to any liability in tax of petitioners for the taxable year 1974 due to the absence of a statutory notice of deficiency. In addition, petitioners contend that they are entitled *84 to carry forward their loss incurred during the taxable year 1974 to the taxable year 1975. Petitioners argue that the losses incurred during 1974 are ordinary which is contrary to respondent's characterization of them as capital in his proposed deficiency for the taxable year 1974. On September 22, 1973, petitioners entered into a partnership agreement with Mr. Michael Soliman for the purpose of establishing a clothing manufacturing business. Petitioners contributed $ 9,000 for their interest in the partnership. On October 23, 1973, the partnership business was incorporated under the name of E & M Fashions, Inc. Petitioners contributed an additional $ 3,000 to E & M to cover operating expenses. Following the incorporation of E & M, Mr. Soliman stole machinery and equipment belonging to the corporation and funds belonging to E & M. Petitioners advanced additional funds to E & M to meet its operating expenses because of Mr. Soliman's activities. In spite of petitioners' efforts to assist E & M in its attempt to continue operations, E & M ceased all operations after March 1974 due to a lack of machinery, equipment and operating funds. There can be no question that E & M suffered *85 losses during 1974 and respondent concedes this point. Furthermore, the appropriation of its machinery and receipts from its customers played an integral part in its termination which resulted in petitioners' E & M stock becoming worthless during 1974. However, these losses could only be attributed to E & M and not to petitioners. Petitioners chose the way of operating the business in the corporation form and must recognize the disadvantages as well as the advantages of operating in such a manner. Moline Properties, Inc. v. Commissioner,319 U.S. 436 (1943). Petitioners have failed to establish that the losses incurred by E & M during 1974 should inure to their benefit as an ordinary loss deduction. Welch v. Helvering,290 U.S. 111 (1933). Respondent argues that petitioners' losses for the taxable year 1974 are capital and therefore limited to the provisions of section 1212(b) for carryover purposes. We agree with respondent. The record before us indicates that petitioners' losses incurred during 1974 were due to their stock in E & M becoming worthless and the nonbusiness bad debts that arose from petitioners' lending money to E & M for the purpose *86 of satisfying claims of creditors and the overall maintenance of business operations. The carry forward of these capital losses to the taxable year 1975, however, will have no affect on petitioners' tax liability for the taxable year 1975 as we will discuss below. With respect to petitioners' taxable year 1975 the issue for our decision is whether petitioners are entitled to deduct $ 14,675 as an ordinary loss arising from the termination of business activities of Fashions. More specifically, we must decide: (1) whether petitioners are entitled to an ordinary loss deduction in the amount of $ 12,000 due to the worthlessness of their stock of a wholly owned corporation (Fashions); (2) whether petitioners' loan of $ 6,775 made to Fashions is a nonbusiness bad debt; and (3) whether $ 4,100 received by petitioners from Fashions represents a reduction of their loan to Fashions. On February 28, 1975 petitioners organized Elizabeth and Joe Fashions, Inc. (Fashions) as a corporation under the laws of New Jersey. They contributed $ 12,000 to Fashions in the form of machinery and money in return for which each received 50 percent of the common stock of Fashions. In addition, petitioners *87 lent $ 6,775 to Fashions during 1975. Mrs. Simeone was an employee of Fashions during 1975 and received a salary in the amount of $ 4,315. Mr. Simeone was also employed by Fashions as a part time employee during 1975 and received a salary in the amount of $ 1,515. In addition, Mr. Simeone was a full time employee of Sea-Land Services, Inc. and received a salary of $ 18,860.48 during 1975. Fashions operated as a clothing manufacturer. However, during 1975 the business proved unsuccessful and Fashions ceased its operations. It sold its machinery and equipment for $ 4,100 and transferred these proceeds to petitioners. On their Federal joint income tax return petitioners claimed an ordinary loss in the amount of $ 14,675 which represented the difference between their capital contributions and loan to Fashions and the proceeds received from Fashions. Respondent takes the position that the loss reported by petitioners must be treated as a capital loss subject to the limitations of section 1211. Respondent argues that: (1) the Fashion stock became worthless during 1975 after Fashions ceased operations and therefore petitioners' loss with respect to their stock is controlled and *88 limited by section 165(f) and (g); (2) petitioners' loan of $ 6,775 to section 165(f) and (g); (2) petitioners' loan of $ 6,775 to Fashions during 1975 is a nonbusiness bad debt subject to the provisions of section 166(d); and (3) the $ 4,100 received by petitioners from Fashions represents a reduction of their loans to the corporation. We agree with respondent. Petitioners' stock in Fashions became worthless during 1975 due to Fashions' inability to succeed in the clothing manufacturing business. Respondent is correct in asserting that section 165(g) controls the character of losses incurred from worthless stock. A loss due to the worthlessness of stock which is a capital asset is treated as a loss from the sale or exchange of a capital asset. [2] While petitioners contributed $ 12,000 to Fashions in return for stock in Fashions they are limited, as respondent determined, to a $ 1,000 capital loss resulting from their Fashions stock becoming worthless during 1975. Sec. 1211, I.R.C.Culley v. Commissioner,29 T.C. 1076 (1958). We therefore hold that petitioners are not entitled to an ordinary loss resulting from the worthlessness of their *89 Fashions stock. With respect to petitioners' loan of $ 6,775 to Fashions, respondent argues that the worthlessness of this debt must be characterized as a nonbusiness bad debt and thus limited to short-term capital loss treatment. Section 166 allows a deduction for any debt which becomes worthless within the taxable year. However, the extent of the deduction depends upon whether the debt is characterized as business or nonbusiness. Section 166(d)(2) defines a nonbusiness debt as a debt other than a debt created or acquired in connection with a trade or business, or a debt the loss of which is incurred in the taxpayer's trade or business. If the debt comes under this definition it is treated as a short-term capital loss under the provisions of section 166(d)(2). The evidence presented by petitioners does not establish that their loan to Fashions was anything other than the creation of a nonbusiness debt. It is well established that the loss from loans made to a corporation by its organizer *90 and controlling shareholder are nonbusiness bad debts. Whipple v. Commissioner,373 U.S. 193 (1963). In addition, petitioners have failed to establish that they were in the trade or business of lending money. Millsap v. Commissioner,46 T.C. 751 (1966), affd. 387 F.2d 420 (8th Cir. 1968). Petitioners were in the trade or business of being employees of Fashions, but there is no evidence before us which would indicate that their loan to Fashions was made to protect their position of an employee. United States v. Generes,405 U.S. 93 (1972). Accordingly, we hold that petitioners are entitled to a short-term capital loss from the worthlessness of their nonbusiness bad debt. The final issue for decision is whether the $ 4,100 received by petitioners from Fashions represents a reduction of their loans to Fashions. Respondent's determination in this regard is presumptively correct and petitioners have the burden of proving an incorrect determination. Welch v. Helvering,290 U.S. 111 (1933). Petitioners have failed in this regard because they presented no evidence to rebut respondent's determination. *91 Therefore, petitioners are not entitled to utilize the worthlessness of their nonbusiness bad debt to the extent of the $ 4,100 reduction. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. There is no evidence before us which indicates that the Fashions stock held by petitioners comes under the exceptions to the definition of a capital asset provided in section 1221.↩