**I. Hal MILLSAP, Jr., and Frances Millsap, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 18803.**

United States Court of Appeals
Eighth Circuit.

Jan. 2, 1968.

Richard M. Webster, of Myers, Webster & Perry, Webb City, Mo., for petitioners, William C. Myers, Jr., Webb City, Mo., same firm, filed brief for petitioners.

Robert I. Waxman, Atty., Dept. of Justice, Washington, D. C., for respondent, Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, and David O. Walter, Attys., Dept of Justice, Washington, D. C., on the brief.

Before VAN OOSTERHOUT, MEHAFFY and HEANEY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Taxpayer I. Hal Millsap, Jr.,[1] has filed a timely petition for review of the deci-

---

1. Frances Millsap, taxpayer's wife, is made a party to these proceedings solely because she joined with her husband in filing joint income tax returns. She did not actively participate in the transactions here involved. For convenience, we shall refer to I. Hal Millsap, Jr., in this opinion as taxpayer.

sion of the Tax Court upholding certain deficiency determinations made by the Commissioner with respect to income tax liability for the years 1957, 58, 59 and 60 aggregating $27,145.83. The opinion of the Tax Court is reported at 46 T.C. 751.

Taxpayer urges that the Tax Court committed error in the following respects:

I. In holding that $83,857.87 outstanding in loans made by taxpayer to Millsap Oil and Gas Company (hereinafter called MOG) which became worthless in 1960 constituted a nonbusiness bad debt as defined by § 166(d) (2), I.R.C.1954,[2] and did not qualify as a business bad debt.

II. In holding that $2500 paid taxpayer by his insurer under its policy provision to compensate him for additional living expenses incurred by reason of destruction of his home by fire was includible in his gross income under § 61 and that additional living expenses incurred were not deductible.

Certain other issues raised in the Tax Court and decided adversely to the taxpayer are not attacked in this appeal. There is no controversy with respect to the computation of the amount found due in the event the issues hereinabove stated were correctly decided by the Tax Court. The 1957 and 1958 deficiencies were caused by rejection of the 1960 loss and hence its unavailability for carryback. There appears to be no substantial dispute as to the basic facts. The Tax Court states in its opinion that it is impressed with the truth of the taxpayer's testimony. The facts are fully and fairly set out in the Tax Court's opinion. For the reasons hereinafter stated, we hold that the Tax Court's decision is entitled to be affirmed.

## I.

It is established and not disputed that in 1960 MOG owed the taxpayer a balance of $83,857.87 for loans made to it which remained unpaid and that such indebtedness due the taxpayer became worthless in 1960. The crucial controverted issue is whether such debt is a business debt or a nonbusiness debt. Section 166(a) (1) states the general rule allowing a deduction in full for a debt that becomes worthless during the taxable year. Section 166(d) provides that the above general rule does not apply to nonbusiness bad debts and that the loss resulting from nonbusiness bad debts shall be considered a loss from sale of short-term capital assets. In general, short-term losses are deductible only to the extent of gains from sale or exchange of capital assets plus the taxable income of the taxpayer or $1,000, whichever is smaller. § 1211(b); Whipple v. Commissioner of Internal Revenue, 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288.

Section 166(d) (2), which defines a nonbusiness debt, reads:

"For purposes of paragraph (1), the term 'nonbusiness debt' means a debt other than—

(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or

(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

Whipple authoritatively resolves existing conflict among Courts of Appeals with respect to interpretation of what constitutes a nonbusiness debt under § 166(d) (2). Mr. Justice White in *Whipple* reviews the legislative history of the statute and the concept of engaging in a trade or business in other tax situations. The Court determines that a taxpayer to obtain a business bad debt deduction must establish that he was in a trade or business and that the loss from the worthless debt is proximately connected with such trade or business. The Court holds:

"Devoting one's time and energies to the affairs of a corporation is not of itself, and without more, a trade or business of the person so engaged.

---

**2.** Statutory references in this opinion, unless otherwise specified, are to I.R.C.1954, 26 U.S. C.A. § 1 et seq.

Though such activities may produce income, profit or gain in the form of dividends or enhancement in the value of an investment, this return is distinctive to the process of investing and is generated by the successful operation of the corporation's business as distinguished from the trade or business of the taxpayer himself. When the only return is that of an investor, the taxpayer has not satisfied his burden of demonstrating that he is engaged in a trade or business since investing is not a trade or business and the return to the taxpayer, though substantially the product of his services, legally arises not from his own trade or business but from that of the corporation." 373 U.S. 193, 202, 83 S.Ct. 1174.

Much more is said in *Whipple* that is pertinent here but no purpose will be served in quoting more extensively from such opinion which is readily available.

The Tax Court relied upon *Whipple* for a determination of the basic law applicable to this case. The taxpayer has not demonstrated that the Tax Court has misinterpreted or misapplied the law as stated in *Whipple* in reaching its decision.

The Tax Court determined upon the basis of the facts before it that the taxpayer was not in the trade or business of promoting corporations for a fee or commission or with a view of holding for a quick resale in the ordinary course of business; that he was not in the business of lending money and that the loans made to the corporation were not for the purpose of preserving a salaried position with the corporation, and that the loans were not proximately related to any separate trade or business of the taxpayer distinct from that of the corporation.

█ The clearly erroneous standard applies to findings of fact by the Tax Court, including reasonable inferences that may be drawn from the established facts. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218; Imbesi v. Commissioner of Internal Revenue, 3

Cir., 361 F.2d 640, 643; Kisting v. Commissioner of Internal Revenue, 8 Cir., 298 F.2d 264, 269.

█ No purpose will be served in discussing in detail the facts supporting the Tax Court's findings. The facts upon the issue of whether the taxpayer was in the business of promoting corporations for a fee or commission or a quick sale are no more favorable to the taxpayer than those set out in *Whipple*. The Tax Court in its opinion has fairly demonstrated that a substantial evidentiary basis exists to support its findings that under § 166(d) (2) as interpreted by *Whipple*, the unpaid loans relate to a nonbusiness debt.

The situation presented by the corporate salary paid taxpayer warrants a brief additional discussion. Taxpayer received a salary from MOG in 1958 of $4,999.92 and $4583.26 in 1959, with no salary in any other year. In *Whipple*, the Court recognized that being a salaried corporate executive may be a trade or business, citing Trent v. Commissioner of Internal Revenue, 2 Cir., 291 F.2d 669. In *Trent,* the loan was made to the corporation by an employee, who had no control over the corporation, in order as the court found to preserve his salaried position. The *Trent* court held that the loans were made in connection with taxpayer's trade or business of rendering services for pay. In our present case, the court determined that taxpayer had introduced no evidence to show that the loans were made by the taxpayer to keep his position or that the loans were otherwise proximately related to maintaining the taxpayer's trade or business as an employee. Indeed, as suggested by *Whipple*, this would be difficult to prove in situations where, as here, the employee is the dominant and controlling stockholder. The salary received by the taxpayer was considerably smaller than that paid officers and employees of the corporation and represented only a modest percentage of the taxpayer's total income in the years that the salary was paid.

Upon the record before us, the Tax Court was warranted in determining,

"the record contains no evidence to suggest that petitioner was significantly motivated in making the advances he did in order to protect his position as a salaried officer of MOG. Cf. Weddle v. Commissioner, 325 F.2d 849 (C.A.2, 1963)." 46 T.C. 751, 758.

## II.

■ The Tax Court properly determined that the $2500 received by taxpayer from his insurance carrier under policy provisions for additional living expenses occasioned by the destruction of taxpayer's home by fire constituted income under § 61. Such section provides:

"Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items; * * *."

In Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 429–430, 75 S.Ct. 473, 476, 99 L.Ed. 483, the Court in its discussion of § 61 states:

"This Court has frequently stated that this language was used by Congress to exert in this field 'the full measure of its taxing power.' * * But Congress applied no limitations as to the source of taxable receipts, nor restrictive labels as to their nature. And the Court has given a liberal construction to this broad phraseology in recognition of the intention of Congress to tax all gains except those specifically exempted."

Revenue Ruling 59–360 provides that insurance proceeds which compensate for additional living expenses constitute gross income under § 61. Taxpayer has pointed to no statutory provision excluding this type of receipt from gross income, and we have found no such provision. The $2500 received for additional living expenses falls within the broad sweep of income under § 61.

Taxpayer in the alternative argues that if the $2500 is includible in income, then the additional living expenses he incurred as a result of the fire are deductible. Section 262 forecloses such relief. Such section reads: "Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses."

■ The expenses incurred by the taxpayer clearly fall in the category of personal, family and living expenses. Taxpayer has pointed to no statutory authorization for the deduction he here claims, nor has he submitted any authority in support of his position. Absent a statutory provision for the deduction claimed, § 262 controls.

The decision of the Tax Court is affirmed.