Marshall L. Fountain v. Commissioner.
Fountain v. Commissioner
Docket No. 6108-65.
United States Tax Court
T.C. Memo 1968-142; 1968 Tax Ct. Memo LEXIS 156; 27 T.C.M. (CCH) 702; T.C.M. (RIA) 68142; July 8, 1968, Filed Marshall L. Fountain, pro se, P.O. Box 49, Louisville, Ga. David S. Meisel, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following income tax deficiencies and additions to tax: *13 Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec.6653(a) [1]
1960
$ 25.90
$ 6.53
$ 3.57
1961
434.98
108.75
21.75
1962
405.19
101.30
20.26
1963
717.72
35.89
Petitioner has conceded several issues raised in his petition. These can be given effect in the Rule 50 computation. The correct amount of the self-employment tax for 1963 can also be computed in accordance with our decision herein for that year. The three issues remaining for decision are: (1) Whether petitioner *158 is entitled to a casualty loss deduction in 1960 and a carryover of any unused loss deduction from 1960 to 1961; (2) whether petitioner is entitled to an additional depreciation or loss deduction on an automobile for 1961; and (3) whether petitioner understated his taxable income from his law practice in the year 1963 and, if so, in what amount. Findings of Fact Some of the facts have been stipulated by the parties and are found accordingly. Marshall L. Fountain (herein called petitioner) was a resident of Louisville, Georgia, at the time he filed his petition in this proceeding. He filed untimely his individual Federal income tax returns for the years 1960 and 1963 with the district director of internal revenue at Atlanta, Georgia, on April 26, 1963, and July 14, 1964, respectively. He has not filed Federal income tax returns for the years 1961 and 1962. Facts Relating to Claimed Casualty Loss On February 5, 1960, petitioner's house and household inventory were totally destroyed by fire. Petitioner had insurance coverage up to a maximum of $4,800 for household contents. In connection with the fire, petitioner furnished the insurance company with a list showing the items *159 allegedly destroyed and his estimate of the value thereof. The items on the list totalled $9,344.67. The insurance company allowed $4,300 as the value of the items destroyed. On his Federal income tax return for 1960 the petitioner claimed a casualty loss in the amount of $8,607.36 in connection with the fire. A schedule attached to the return showed the computation of the Figures, as follows: Purchase price of house and 50 acres of land
$12,000.00
Landscaping and cleaning
200.00
Painting front of house and two (2) rooms
150.00
Rewinding and labor on well pump motor
112.00
Installing pressure switch on pump
27.50
Gas tank and installation
205.95
Sears Roebuck (furnishing & install- ing bathroom, seven (7) heaters and other miscellaneous work)
2,095.24
Augusta Roofing & Metal Works (in- stalling roof)
1,030.00
August Roofing & Metal Works (screen & window work)
105.00
Lamb Brothers Lumber Co 37.00
Total cost of house, repairs and land
$16,062.69
Less value of land 2,500.00
Total cost of house and repairs
$13,562.69
Household inventory, February 5, 1960 9,344.67
Total loss by fire, February 5, 1960
$22,907.36
Less insurance received on household inventory 4,800.00
$18,107.36
Less insurance received on house 9,500.00
Total net casualty loss, February 5, 1960
$ 8,607.36
*160 In his notice of deficiency for the year 1960, respondent disallowed the entire casualty loss claimed, based upon the following computation: Loss per return
$8,607.36
Less: Corrected value of land ($80 per acre) 50 acres
$ 4,000.00
Value per return 2,500.00
Decrease
$1,500.00
Insurance proceeds corrected
$11,853.16
Insurance proceeds per return 9,500.00
Decrease
2,353.16
Settlement & cancellation of debt by Sears Roebuck
1,976.87
Credit for gas tank
205.95
Value of household inventory per return
$ 9,344.67
Value of household inventory corrected 6,773.29
Decrease
2,571.38 8,607.36
Loss corrected
none
Petitioner admits that respondent's computation is correct in all respects except for the corrected value assigned to the household inventory. The household contents destroyed in the fire consisted of furniture, rugs, accessories, antiques, books, office equipment, an organ, clothing, records and record players, radios, fishing equipment, a gun, kitchenware, appliances, food, tools and other miscellaneous items. The individual items had been acquired by petitioner over a number of years, mostly between the years 1954 *161 through 1959. Petitioner acquired the items from a variety of sources, including auction companies, used furniture stores, pawn shops, department stores, antique shops, private parties, an estate, a hotel that went out of business and gifts and inheritances. Facts Relating to Claimed Additional Depreciation or Loss on Automobile On July 26, 1960, petitioner purchased a 1956 Cadillac convertible automobile for $2,000. On June 5, 1961, he traded the convertible for a 1955 Dodge station wagon, $90 in cash, and an installment note for $210. Petitioner was engaged in the private practice of law during the years 1960 through 1963. Petitioner used the convertible during 1961 for the purpose of commuting between his residence and his office which was a distance of about 26 miles. He was the only one who used the automobile he owned during 1961. Since petitioner did not file a Federal income tax return for the year 1961, respondent determined his income for that year by taking into account specific items of income and by computing his income from his legal practice on the bank deposits method. In so doing, respondent determined that petitioner was entitled to depreciation in 1961 *162 on a 1956 Cadillac automobile, acquired on August 21, 1959, for six months in the amount of $484.12. In addition, respondent determined that petitioner was entitled to depreciation in 1961 on a 1955 Dodge station wagon automobile, acquired on June 5, 1961, for six months in the amount of $200. Facts Relating to Understatement of Taxable Income for 1963 In the year 1963 the petitioner made bank deposits of $8,988.88 in the Bank of Thomson, Georgia, and $5,720.88 in the First National Bank of Thomson, Georgia. In his notice of deficiency for the year 1963, respondent determined that petitioner's correct income from his law practice was $5,335.26 in lieu of the $2,678.28 reported on his Federal income tax return. Therefore, respondent determined that petitioner had additional taxable income from his law practice in the amount of $2,656.98, computed as follows: Deposits:
Bank of Thomson, Georgia
$ 8,988.88
First National Bank of Thomson 5,720.88
Total deposits
$14,709.76
Less: Non-income items 6,846.36
Income deposited
$ 7,863.40
Income not deposited - cash 687.62
Gross receipts
$ 8,551.02
Less interest collected 30.00
Gross receipts - Self-employment
$ 8,521.02
Expenses - per return
$3,674.04
Auto expense - 10% per- sonal
(32.04)
Depreciation adjustment
(16.62)
Telephone expenses - dupli- cation (439.62)
$ 3,185.76
Net profit
$ 5,335.26
Reported on return 2,678.28
Net profit understated
$ 2,656.98
*163 Opinion Since petitioner, a practicing attorney who represented himself in this case, has filed no brief, we have gleaned his positions on the three issues primarily from the transcript and the petition. 705 Issue 1 Claimed Casualty Loss Petitioner's house and household goods were destroyed by fire on February 5, 1960. He claimed a casualty loss of $8,607.36 on his Federal tax return for that year which respondent has disallowed. Still at issue is the fair market value of the household inventory immediately before the fire. Petitioner claims that the household contents had a fair market value of $9,344.67 at that time. Respondent, on the other hand, has determined that its fair market value prior to the fire was $6,773.29. Thus the only issue remaining with respect to the claimed casualty loss is the amount of the deduction, if any, to which petitioner is entitled for the loss of his household inventory. Section 165(a) of the Code provides that a deduction shall be allowed for any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(c) (3) includes losses arising from fire. Section 165(b) provides that "the basis for *164 determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property." Section 1.165-7(b) (1), Income Tax Regs., provides that the amount of loss to be taken into account for purposes of section 165(a) shall be the lesser of either - (i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or (ii) The amount of the adjusted basis prescribed in § 1.1011-1 for determining the loss from the sale or other disposition of the property involved. Hence, the measure of a casualty loss to nonbusiness property is the difference between the fair market value of the property immediately before the casualty and its value immediately thereafter, which may not exceed the original cost basis of the property. Helvering v. Owns, 305 U.S. 468 (1939); and I. Hal Millsap, Jr., 46 T.C. 751 (1966), affd., 387 F. 2d 420 (C.A. 8, 1968). In the instant case the petitioner has failed to prove that the fair *165 market value or the basis of the items destroyed, immediately before the fire, was in excess of $6,773.29, the amount allowed by respondent. The only evidence is petitioner's rather general testimony and the list he submitted to the insurance company. It is clear from his explanation that he did not value the individual items at their fair market value, viz., the price at which property would change hands in a transaction between a willing buyer and a willing seller, neither being under compulsion to buy nor to sell and both being reasonably informed as to all relevant factors. His responses to questions on cross-examination reveal that he actually based the values ascribed to the items on his list on his own subjective measure, i.e., what they were worth to him. Petitioner's testimony as to specific items shows that he was unable to recall what the items were that he lost or what they originally cost him. For example, he was not willing to provide an estimate of how many books were in his library, how many suits were in his wardrobe, or how many records were in his record collection. We do not know what, if any, consideration his listed values gave to the fact that many of the items *166 of personal property were of a type that would have depreciated in value over a period of time. He had no experience in selling items similar to those destroyed in the fire. He had no experience in purchasing at secondhand items similar to those in his inventory which he purchased new. His lack of experience in such matters demonstrates that little weight should be given to his testimony. In short, petitioner did not know just what he lost in the fire. He did not know what his original cost of many items was or where he had acquired them or from whom they were acquired. Furthermore, he valued them at what he felt they were worth personally, or what their replacement cost would have been, not according to accepted standards of fair market value. Consequently, he failed to meet his burden of proof and is not entitled to any loss deduction. It is important to note that this is not a case in which all value assigned to property lost in a casualty has been disregarded for lack of substantiation. To the contrary, respondent assigned a substantial value to the items destroyed. We regard his determination as manifestly fair under the circumstances, giving consideration to the nature of the *167 individual items, the length of time they were used and the sources from which they were acquired. We hold that there was no allowable casualty loss in 1960. It therefore follows that there is no carryover of an unused casualty loss deduction to 1961. Issue 2 Claimed Additional Depreciation or Loss on Automobile Petitioner has made alternative claims - additional depreciation or loss - based on 706 the following facts. He bought a Cadillac convertible on July 26, 1960, for $2,000. On June 5, 1961, he traded the convertible for a 1955 Dodge station wagon, $90 in cash and an installment note for $210. he claims the station wagon was worth $500. Although he apparently contends that he used the convertible in his business as an attorney, he used it primarily to commute between his residence and office, a distance of 26 miles, and for occasional trips within the State of Georgia. During 1961 the petitioner was engaged in the private practice of law. He was the only one who used the automobiles he owned. It does not appear that any part of the use of the two cars he owned in 1961 had been allocated to personal use. Between the two cars upon which depreciation was allowed, respondent *168 has given petitioner the benefit of a determination that their use was 100 percent business use. Section 167(a) (1) provides for the allowance of a depreciation deduction in connection with property "used in the trade or business." We fail to see how petitioner would be entitled to any additional depreciation for automobiles "used" in his trade or business after he has already been allowed the whole year's use of an automobile. Thus we view the petitioner's claim for additional depreciation as lacking any merit. Petitioner's alternative contention that he is entitled to a deduction for a loss in connection with the convertible is likewise without merit. It is not at all clear upon what basis petitioner predicates his claim for a "loss" on the automobile. Possibly he is contending that he sustained a casualty loss when, as he alleged in his petition, "the motor went bad." He stated that "after I sold it the thing tore up." He said "the motor blew up, so that was the end of the car, as far as that was concerned." It does not appear that petitioner meant that the motor exploded, but rather that it was internally damaged. There is no evidence that it was involved in a collision or otherwise *169 accidently damaged. The car was four or five years old when petitioner purchased it. Although there is no evidence showing how many miles it had been driven over that time, common experience would indicate that the mileage probably was substantial. The reasonable inference to draw is that any breakdown was due to progressive deterioration, which does not constitute a "casualty." Fay v. Helvering, 120 F. 2d 253 (C.A. 2, 1941). We hold that the petitioner has failed to carry his burden of proof on this issue and is not entitled to any additional depreciation or loss deduction for 1961. We sustain respondent's determination. Issue 3 Understatement of Taxable Income in 1963 Respondent determined that petitioner understated his income from the practice of law in the amount of $2,656.98 for the year 1963. Petitioner admitted that he had understated his income from that source by $888.28. Therefore, the only question is the extent to which petitioner understated his income. Petitioner's testimony in this regard was that he had checked his bank records and was able to find an understatement of only $888.28. His bank records were received in evidence. But there was no *170 testimony by petitioner to connect his records to his otherwise unsupported self-serving statement that the amount of understatement was less than shown in the notice of deficiency. Despite admonitions by the Court, petitioner chose to put the records into evidence with no explanation. Certainly we cannot be expected to sift through these records to make his case for him. That is not our function. The amounts of petitioner's bank deposits have been stipulated. He claimed at the trial that respondent was in error with respect to either the non-income items or the expenses, but he failed completely to show where there was any error. It is incumbent upon the taxpayer to produce evidence which reasonably demonstrates that the respondent's determination is wrong. National Weeklies, Inc. v. Commissioner, 137 F. 2d 39 (C.A. 8, 1943). He has not done so. Consequently, he failed to carry his burden of proof on the amount of his understatement of income. Under the circumstances respondent's determination must be accorded its full presumption of correctness and the deficiency for 1963 is sustained in its entirety. Welch v. Helvering, 290 U.S. 111 (1933). To reflect *171 the conceded issues and the conclusions reached herein on the disputed issues, Decision will be entered under Rule 50. 707 Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.↩