ROBERT BRIANT and VIRGINIA WOODS BRIANT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
BRIANT v. COMMISSIONER
Docket No. 10994-80.
United States Tax Court
T.C. Memo 1982-397; 1982 Tax Ct. Memo LEXIS 340; 44 T.C.M. (CCH) 472; T.C.M. (RIA) 82397; July 19, 1982. *340 Petitioner, Virginia Woods Briant, was a U.S. citizen in 1976 but had lived in Canada since 1972. She was ordained as a minister in Canada and performed services as such in a church in Canada. She did not apply for exemption from the U.S. self-employment tax. Held, petitioner is subject to the U.S. self-employment tax. Held,further, a debt arising out of a loan made by petitioner in 1975 to an individual who thereafter disappeared became worthless in 1976 and petitioners are entitled to a nonbusiness bad debt deduction in the amount thereof for 1976. Virginia Woods Briant, pro se. Milton J. Carter, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency of $594.10 in petitioners' 1976 Federal income tax. The issues are (1) whether petitioners are subject to self-employment tax and (2) whether petitioners are entitled to a bad debt deduction for 1976. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioners Robert Briant and Virginia Woods Briant, husband and wife, resided in Vancouver, *341 British Columbia, Canada, at the time they filed their petition herein. Petitioners filed a joint U.S. income tax return for 1976. Petitioner Robert Briant is a party herein solely by virtue of his having filed a joint return with his wife, Virginia Woods Briant (hereinafter petitioner). Petitioner was a U.S. citizen during 1976 who has resided in Canada since 1972. On July 24, 1974, petitioner was ordained a Diaconate of the Anglican Church of Canada. On November 30, 1976, petitioner was ordained into the priesthood for the Anglican Church of Canada. From July 24, 1974, to the date of trial, petitioner has been employed by the Christ Church Cathedral, Anglican Church of Canada, in Vancouver, British Columbia, Canada. Petitioner has never been a priest or minister within the United States nor ever worked for a U.S. church. During 1976 petitioner was covered by two pension plans, one by the government of Canada and the other by the National Anglican Church of Canada. During 1976 petitioner was paid the equivalent of $8,636.60 U.S. dollars by Christ Church Cathedral for services she performed. Under section 911, I.R.C. 1954, effective for 1976, she excluded that amount from *342 income reported on her 1976 U.S. income tax return. Petitioner paid no U.S. self-employment tax on these earnings. On July 11, 1975, petitioner loaned $2,700 to K. Taylor-Davis (hereinafter Davis). Davis had worked with petitioner's husband and approached petitioner for the loan while petitioner's husband was away in Alaska. Davis told petitioner that she needed the money so she could travel to Europe to be married. Davis signed a promissory note at the time she borrowed the money, agreeing to pay back the $2,700 plus interest at 7 percent, on or before January 11, 1976. At the end of July, petitioner's husband returned from Alaska, and petitioner informed him of the loan made to Davis. Petitioner's husband was upset that petitioner had loaned Davis the money since he believed that Davis had no intent to pay the money back. Petitioner's husband contacted some of Davis' friends in Canada in an unsuccessful attempt to locate Davis' whereabouts. Davis left petitioner an address of a cannery in Europe where she could be reached. As of the time of trial, petitioner had not attempted to reach Davis in Europe because petitioner was unaware of Davis' married name and did not believe *343 Davis would receive any correspondence from her. From the date petitioner gave Davis the money until the date of this trial, petitioner had not heard from Davis and was unaware of Davis' whereabouts. Davis did not repay petitioner the money on January 11, 1976, as promised, nor has she repaid petitioner any of the money to date. On their 1976 Federal income tax return, petitioner deducted the $2,700 loaned to Davis as a nonbusiness bad debt. In his statutory notice of deficiency, respondent disallowed the bad debt deduction and also determined a self-employment tax on petitioner's wages earned as a minister while in Canada. OPINION The first issue is whether petitioner, an American citizen, is liable for U.S. self-employment taxes on income earned while employed in Canada as a minister. Petitioner asserts that it is inequitable for the United States to collect self-employment taxes from her since she has already paid into two pension plans in Canada. Respondent asserts that petitioner was clearly subject to the self-employment tax and that this Court does not have equity jurisdiction to find otherwise. While we recognize the reason for petitioner's concern over why she should *344 have to pay retireent taxes to three different sources, [1] we must agree with respondent. The law in this area has been changed many times in the last 25 year and is confusing, but the bottom line is clear. Section 1401[2] *345 imposes a tax upon the self-employment income of every individual. Section 1402(a) defines "net income from self-employment" as the gross income derived by an individual from any trade or business carried on by such individual, less the allowable deductions attributable to such trade or business, except that in computing gross income, subsection (a)(8) provides that a duly ordained minister shall compute his net earnings from self-employment from the services described in subsection (c)(4) without regard to section 911. [3] The term "trade or business," when used in reference to self-employment income, as defined in subsection (c), shall have the same meaning as wehn used in section 162, except that such term shall not include-- (2) the performance of service by an individual as an employee, other than -- (D) Service described in paragraph (4) of this subsection. Paragraph (4) provides that the term shall not include "the performance of service by a duly ordained * * * minister." However, the flush language at the end of subsection (c) provides that paragraph (4) shall not apply to service performed by an individual unless an exemption under subsection (e) is effective with respect to him. Subsection (e) provides that any duly ordained minister, upon filing an application, together with a statement that he is conscientiously opposed to, or because of religious principles is opposed to the acceptance of any public insurance which makes payments in the event of death, disability, old age, or retirement, shall be exempt from self-employment tax with respect to services performed by him as a minister. From this rather convoluted language of the statute, as it read in 1976, [4] we conclude that the earned *346 income of a minister, who is a citizen of the United States, from his trade or business, regardless of where and for whom he performs his ministerial services, is subject to the U.S. self-employment tax, unless he or she is qualified to file and files an application for exemption from the tax. The performance of services by a minister is considered a trade or business for self-employment tax purposes. See sec. 1402 (c)(2)(D). See also Rev. Rul. 80-110, 1980-1 C.B. 190. And a minister shall compute his self-employment income without regard to section 911. We note that simply because petitioner's income was earned in Canada does not entitle petitioner, a U.S. citizen, to exclude such amount from her self-employment income. While section 911(a) provides, in pertinent part, that in the case of an individual who establishes that he has been a bona fide resident of a foreign country for an uninterrupted *347 period, amounts received from sources without the United States which constituted earned income attributable to such services shall not be included in gross income for income tax purposes, such amounts cannot be excluded from self-employment tax. See sec. 1402(a)(8), and Conf. Rept. 92-1605, 92d Cong. 2d Sess. 2d. Sess., (1972), 1972-2 C.B. 759-760, which states "all American clergymen serving foreign congregations outside the United States would compute their self-employment income for social security purposes without regard to the $20,000 exclusion of income earned abroad." Since petitioner was a citizen of the United States in 1976 and had not filed an application for exemption from the self-employment tax, we have no alternative but to conclude that her income earned from the performance of her ministerial duties in Canada were subject to the self-employment tax, and respondent's determination must be sustained on this issue. [5] *348 Petitioner, however, asserts that it is inequitable for her to be subject to the self-employment tax since she has already paid into two pension plans in Canada. While we sympathize with petitioner, we are without equity jurisdiction to relieve her of the tax. Hays Corporation v. Commissioner,40 T.C. 436, 442-443 (1963), affd. 331 F.2d 422 (7th Cir. 1964), cert. denied 379 U.S. 842 (1964). The remaining issue is whether petitioner is entitled to a nonbusiness bad debt deduction under section 166(d). Respondent contends that petitioner is not entitled to the deduction since she has failed to show that the debt was worthless during 1976. Section 166(d)(1) allows a deduction for a nonbusiness debt which becomes wholly worthless during the taxable year. The burden of proof is on petitioner to show that the debt from Kathryn Taylor-Davis became worthless in 1976. The evidence indicates that Davis approached petitioner in the *349 middle of 1975 to obtain a loan of $2,700 to travel to Europe to get married. Petitioner gave her the money and received a note for $2,700 in exchange, which was payable January 11, 1976. Davis then disappeared and petitioner has not seen nor heard from her since. Petitioner's husband made several attempts through mutual friends or acquaintances in Canada to locate Davis or find out her whereabouts, but all to no avail. Petitioner did not know Davis' married name and had only the address of a cannery in Europe which Davis had given her. Petitioner did not write to Davis at that address because she believed a letter would never reach her. The note was not paid when it became due in January of 1976 and nothing had been paid thereon at the time of the trial herein. There is no question that the loan was made in 1975 and that petitioner has not seen nor heard from Davis since. Petitioner's husband, who had worked with Davis, did not think she would ever pay it back. We think that under the circumstances, petitioner was justified in determining that the debt was worthless by the end of 1976. Perhaps petitioner should have written to the address in Europe, but we agree with petitioner *350 that it is highly unlikely that such a letter would have elicited a response even if it was delivered. Furthermore, petitioner would not have been in a position to collect the debt from the debtor even if she had located her in Europe. We think petitioner was a candid, truthful, and reasonable witness and that her judgment of the situation by the end of 1976, and the circumstances, are enough to carry her burden of proving that the debt became worthless in 1976. Millsap v. Commissioner,46 T.C. 751 (1966), affd. 387 F.2d 420 (8th Cir. 1968); Johnstone v. Commissioner,17 B.T.A. 366 (1929). We hold that the debt became worthless in 1976 and that petitioners are entitled to a nonbusiness bad debt deduction in the amount thereof for 1976. Decision will be entered under Rule 155.
Footnotes
1. Initially we harbored some doubts ourselves about a person having to pay U.S. self-employment tax on income earned in Canada which was properly excludable from gross income for U.S. income tax purposes.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. 3. Sec. 911↩ deals with the exclusion from gross income of certain earned income in a foreign country, and will be discussed later.
4. The status of ministers with respect to the social security tax has been changed on numerous occasions. For example, for the years 1954 thru 1967, ministers had to file an election to be covered by the Social Security System. Since 1967, they have had to file an appliction not to be covered.↩
5. It may seem illogical that petitioner's foreign source income is exempt from U.S. income tax but still makes her subject to the U.S. self-employment tax. But such is the law and we are powerless to change it. Henson v. Commissioner,66 T.C. 835, 837-838 (1976). Of course petitioner could have avoided the self-employment tax had she filed the required statement and application for exemption; but then again she may not have been qualified to truthfully make the required statement. See sec. 1402(e)↩ for the requirements.