T.C. Memo. 1995-515

UNITED STATES TAX COURT

LEONARD L. LEIGHTON AND JOYCE S. LEIGHTON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21169-93.                    Filed October 30, 1995.

<u>Leonard L. Leighton</u>, for petitioners.

<u>Stephen C. Coen</u>, for respondent.

MEMORANDUM OPINION

KÖRNER, <u>Judge</u>:  Respondent determined deficiencies in and
additions to petitioners' Federal income taxes for the years and
in the amounts as follows:

| | | Additions to Tax Under Section | | | |
|------|------------|----------------|----------------|-------------|--------|
| Year | Deficiency | 6653(a)(1)(A) | 6653(a)(1)(B) | 6653(a)(1) | 6661 |
| 1987 | $463,497 | $23,175 | * | -- | $115,874 |
| 1988 | 6,530 | -- | -- | $327 | 1,633 |

*50 percent of the interest due on the deficiency.

All statutory references are to the Internal Revenue Code
in effect for the years in issue, and all Rule references are to
the Tax Court Rules of Practice and Procedure, except as
otherwise noted.

Petitioners Leonard L. and Joyce S. Leighton were residents of San Antonio, Texas, in the years 1987 and 1988, and at the time the petition was filed in this case. For those years, they filed joint income tax returns on the cash basis. Hereinafter, references to petitioner are to Leonard L. Leighton.

The issues we must decide in this case are: (1) Whether respondent erred in determining that petitioners had unreported ordinary income in 1987 of $762,685; (2) whether respondent erred for 1987 in determining that petitioners had unreported net capital gains of $653,787; and (3) whether petitioners had net capital losses in excess of any reportable capital gains for 1987. Minor additional adjustments to income, as well as additions to tax for each year for negligence and for substantial understatement of tax under sections 6653 and 6661, were raised as issues in the petition herein, but were never mentioned by petitioners thereafter, either at trial or on brief, and are deemed to be conceded. See Rule 151.

Petitioner is a practicing attorney at law in San Antonio, Texas, having received his license to practice in 1961, and he also holds a masters in taxation degree from New York University. He has taught law at the law school at St. Mary's University. At least since 1981, petitioner has been a partner in a law firm in San Antonio, Texas, and Mrs. Leighton has worked for such firm as a secretary. Petitioner was principal partner of and held a controlling interest in said law firm from 1981 through 1988, and

was also engaged in law practice and other activities prior to that time. Petitioner was on the board of directors of a bank known as Schertz Bank & Trust Co. from 1975 through 1987, and at one time owned a controlling interest and was a director in said bank. Petitioner maintained a number of bank accounts at the Schertz Bank in the names of himself, his law partners, his wife, or in similar names showing involvement in professional activity. Petitioner also maintained bank accounts in at least seven other banks, which were likewise titled either in the name of himself, his wife, his partners, or associated interests, and over which he had control. The principal account which petitioner maintained at the Schertz Bank, however, known as the "Leonard Leighton, Attorney at Law", account, had checks drawn by both petitioner or his wife, and was the depositary of many funds.

Using friends, and sometimes clients, as sources, from 1972 through 1988, petitioner promoted and managed more than forty real estate ventures, sometimes called "joint ventures", involving raw land, apartment complexes, and motels. His friends and clients were the principal sources of investment in these ventures, which were composed of different individuals who invested varying amounts of money in the various joint ventures. Petitioner drew all necessary joint venture agreements and conducted all necessary negotiations regarding purchases and sales in these ventures. No two joint ventures had identical

investors, except that petitioner himself was a member of every venture; he was the only common member.

Petitioner kept no journals, ledgers, or other formal books of account for the joint ventures. To the extent there was any contemporaneous accounting for investors' funds collected by petitioner, it consisted merely of notes on check stubs. Although no member of any of the joint ventures authorized petitioner to transfer funds from one joint venture to another joint venture, petitioner consistently did so, as the need for funds to meet the obligations of one joint venture would arise, and funds available to petitioner would be in another joint venture. Petitioner accordingly did extensive commingling of funds between the various joint ventures, of which he was the only common member. He did such commingling on his own authority. Some funds were also abstracted from joint venture moneys received by petitioner and were used for his personal purposes. This commingling of funds, and their application to other accounts and in some cases to petitioner's personal purposes, was done without any knowledge or authorization by the other investors in the various joint accounts, either orally or in writing. All such transfers were done by petitioner on his own authority.

As a result of commingling and appropriations in the many joint ventures in which petitioner was engaged, together with certain sales, failures, and foreclosures that occurred, lengthy

litigation regarding certain of the ventures was brought by certain investors in the Texas courts against petitioner, and substantial judgments have resulted against him, which as yet remain unpaid. The Texas Bar Association also proceeded in the courts against petitioner for his unethical conduct in mishandling and misapplying clients' funds that were intrusted to his care. Petitioner agreed to substantial restitution to various investors for their funds which had been misapplied, but it is not shown that such restitution has occurred. Petitioner was found guilty of improper conduct in the handling of his clients' funds; in lieu of outright disbarment, he was placed on probation for a period of 10 years.

Upon examination of petitioners' returns for the years in issue here, respondent determined that petitioner had misappropriated $762,685 in 1987, which had been spent either for his own personal purposes or to relieve the financial necessities of other joint ventures in which he was the only common principal, and respondent added such amount to petitioner's income. Petitioners challenge this determination.

The statutory notice of deficiency in issue herein also determined that petitioner, as principal of the various ventures, had unreported capital gains in 1987 of $653,787, as the result of certain of the joint ventures that were sold, went to closing and were paid off.

Petitioner denies all this, and petitioner further claims unspecified capital loss deductions for 1987 based on judgments entered against him by holders of notes and members of the various joint ventures, as well as on account of an alleged $100,000 loss on a loan made by petitioner to a particular joint venture. Petitioner claims that his loss in various of the joint ventures was established when he abandoned his interests in said ventures, or when said judgments were rendered against him.

As to the three issues remaining to be decided in this case, as we have detailed above, the burden of proof--that is to say, the burden of ultimate persuasion--was upon petitioners. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). It was the task of petitioners to convince the Court by adequate proof that respondent was in error, and to what extent, in determining that petitioners had the additional income for 1987, which respondent determined came about as a result of petitioner's illegal abstraction of funds to commingle with other joint accounts over which he had control, as well as abstraction of funds to use for petitioner's personal purposes. Likewise, it was petitioners' burden to show that respondent's determination of additional unreported capital gains income in 1987 was erroneous, and to what extent. Finally, it was petitioner's burden to demonstrate that he had additional losses that were deductible for the year 1987, in excess of any capital gains which he otherwise had realized.

Petitioners totally failed to carry their burden of proof on all points. Despite a great deal of generality, petitioner (who was the only witness for petitioners) stayed well away from mentioning any amounts of the unreported income for 1987 that had been determined by respondent, as being erroneous, let alone proving any such amounts. Likewise, petitioner testified to no amounts, and offered documentary evidence as to no amounts, by which respondent had determined excessive capital gains realized by petitioner in 1987. Finally, petitioners totally failed to establish that they had incurred any long-term capital losses in excess of any realized gains, based upon the argument that the judgments rendered against petitioner created losses that he could deduct, and that he incurred deductible losses when his joint venture projects were abandoned.

This failure of essential proof runs throughout each issue in the case:

(1) As to the additional unreported income resulting from petitioner's misapplication of trust funds and his taking of joint venture funds for his personal uses, it is well established that gross income for income tax purposes includes income that a person takes or receives and that is subject to his control and disposition, even if the income be illegally obtained. Sec. 61(a); <u>James v. United States</u>, 366 U.S. 213 (1961); see <u>Rutkin v. United States</u>, 343 U.S. 130 (1952). Petitioner admitted that he misappropriated joint venture funds from the trust accounts that

he maintained for his coventurers, and he also admitted that he took some of such funds for his personal uses. He totally failed to show the extent, if any, where respondent was in error as to her determination of additional unreported income.

(2) As to the additional unreported capital gains for 1987, respondent admitted that some cost basis had been allocated to petitioner in her computation of the capital gains. There is no evidence in this record, and petitioner has produced none, that petitioners had any cost basis in excess of that allowed by respondent which would reduce the net capital gains in any of the recomputations that respondent made. Sec. 1012. In fact, to the extent that any of the testimony at trial herein or any of the exhibits admitted into evidence touched upon it at all, it was strongly suggested that petitioner had no cost basis in the various ventures in any amount.

(3) As to the additional capital losses claimed by petitioners as an offset, and more, to the capital gains determined by respondent, petitioner has produced no evidence of any amounts of loss, but instead has relied on a general argument that the judgments rendered against him, as well as the abandonment of various projects by the joint ventures, produced capital losses which he could deduct. Quite aside from petitioner's failure to prove any cost basis in any of these ventures, as we have mentioned above, it does not appear that any of the judgments which petitioner admits were rendered against

him (in some amount) have yet been paid, and petitioner admitted as much on the witness stand.  Likewise, there is no proof that any of the alleged joint ventures formally abandoned their interests in the properties concerned in 1987, nor what petitioner's interest in any such joint venture was.[1]

Although section 165(a) provides that there shall be allowed as a deduction any loss sustained during the taxable year (and not compensated by insurance or otherwise), the basis for determining such loss must be the adjusted basis under section 1011.  The amount of loss allowable shall not exceed the taxpayer's adjusted basis in the asset, sec. 1.165-1(c), Income Tax Regs.  Petitioners have the burden of proving the amount of their basis, Millsap v. Commissioner, 46 T.C. 751, 760 (1966), affd. 387 F.2d 420 (8th Cir. 1968), and the loss cannot be computed where the taxpayer (petitioners here) failed to prove their basis in the property in question.  Both petitioner's arguments suffer from the same defect:  there is no admissible evidence showing that petitioner had any cost basis in any joint venture which allegedly was abandoned in 1987, and there is no

---

[1]  The record herein contains a mass of petitioner's exhibits, some of which purport to show losses and recorded judgments with respect to some of petitioner's joint ventures. These exhibits were admitted into evidence solely for showing the mass of documents that petitioner had furnished to respondent in the preparation of this case; they were not stipulated as true or admissible as to their contents by respondent.  This limitation on admissibility was clearly stated in the trial stipulation executed by the parties.  See Rules 91, 143.

evidence that he paid any of the judgments that have been rendered against him, which would add to his cost basis in such ventures.

All other adjustments in the statutory notice of deficiency having been conceded by petitioner,

<u>Decision will be entered</u>

<u>for respondent</u>.