T.C. Memo. 2001-235


UNITED STATES TAX COURT


ESTATE OF JAMES W. BOYLE, DECEASED, NANCY A. BOYLE AND JAMES H. CASE, CO-PERSONAL REPRESENTATIVES AND NANCY A. BOYLE, Petitioners <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18586-98.                    Filed September 10, 2001.


<u>David W. K. Wong</u>, for petitioners.

<u>Henry E. O'Neill</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


MARVEL, <u>Judge</u>:    Respondent determined a deficiency of $60,820 in the Federal income tax of petitioner Nancy A. Boyle (Mrs. Boyle) and her deceased husband, James W. Boyle (decedent),

for 1995.  The only issue[1] for decision is whether, under section 165,[2] the decedent and Mrs. Boyle properly deducted a casualty loss of $173,833 on their Federal income tax return for 1995.

FINDINGS OF FACT

The facts of this case have been fully stipulated pursuant to Rule 122.  We incorporate the stipulation of facts into our findings by this reference.

Petitioners are the Estate of James W. Boyle, Deceased, Mrs. Boyle and James H. Case, Co-Personal Representatives, and Mrs. Boyle, the surviving spouse of decedent.  Decedent, who died on October 24, 1998, and Mrs. Boyle (together, the Boyles) were husband and wife during 1995 and timely filed a joint Federal income tax return for 1995.  Mrs. Boyle and James H. Case are the duly appointed personal representatives of decedent's estate. Petitioners resided in Honolulu, Hawaii, on the date the petition was filed.

In June 1979, the Boyles purchased a commercial warehouse building (old warehouse) located in Honolulu, Hawaii.  The Boyles owned the old warehouse as joint tenants at all relevant times. Their cost basis in the old warehouse as of June 1979 was

---

[1] The only other issues raised in the notice of deficiency are computational or were conceded by petitioners.

[2] All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Monetary amounts are rounded to the nearest dollar.

$148,479.  The Boyles depreciated the old warehouse using the straight-line method and a 20-year useful life, beginning in 1979, claiming annual depreciation deductions of $7,424.[3]  On January 1, 1993, the Boyles' adjusted basis in the old warehouse was $48,255.

On December 13, 1993, the old warehouse was completely destroyed by fire.  Immediately prior to the fire, the fair market value of the old warehouse was between $600,000 and $700,000.  Immediately after the fire, the fair market value of the old warehouse was zero.  As of the date of the fire, the Boyles' adjusted basis in the old warehouse was $40,831.

When the fire occurred, the old warehouse was covered by a replacement cost fire insurance policy (insurance policy) issued by Pacific Insurance Co. (Pacific).  The Boyles anticipated that the insurance policy would cover all the costs of constructing a new warehouse to replace the old warehouse and submitted a claim to Pacific.  A dispute, however, arose between the Boyles and Pacific as to whether the insurance policy would cover that part of the construction costs associated with changes in building code requirements that occurred between the time the old warehouse originally was constructed and the date of the fire.  As a result of that dispute, the amount of insurance reimbursement the Boyles reasonably expected to receive under the

---

[3] In 1979, the Boyles deducted only $3,712.

insurance policy was uncertain until 1995, when the Boyles and Pacific settled the claim. Pursuant to the settlement, Pacific paid $553,793 to reimburse the Boyles for the destruction of the old warehouse, and the Boyles constructed a new warehouse at a total cost of $698,935 to replace the old warehouse.[4]

On their 1995 Form 1040, U.S. Individual Income Tax Return, the Boyles claimed a depreciation deduction of $7,424 and a casualty loss in the amount of $173,833 with respect to the old warehouse. The parties stipulated that the casualty loss was computed as follows:[5]

---

[4]The Boyles' net out-of-pocket investment to construct the new warehouse was only $145,142 after application of the insurance proceeds.

[5]The computation made by the Boyles on their 1995 return as reflected on Form 4684, Casualties and Thefts, differs from the stipulated computation and was as follows:

| | |
|---|---|
| Cost or adjusted basis of property | $727,626 |
| Insurance or other reimbursement | 553,793 |
| Fair market value before casualty | 750,000 |
| Fair market value after casualty | NONE |
| Difference | 750,000 |
| Enter the smaller of the adjusted basis or the difference in fair market value before and after the casualty as the casualty loss claimed | 173,833 |

| | |
|---|---:|
| Original cost of<br>    old warehouse (June 1979) | $148,479 |
| Cost of reconstruction | 698,935 |
| Amortizable costs | <u>112,360</u> |
| | |
| Total Costs | 959,774 |
| | |
| Less: | |
| Depreciation claimed | [1](122,495) |
| Insurance Proceeds | (553,793) |
| Amortization claimed | <u>(109,653)</u> |
| | |
| Casualty Loss Claimed | 173,833 |

[1]This figure includes $7,424 in depreciation for 1995.
The Boyles did not report any gain realized from the destruction
of the old warehouse on their 1995 return.

In his notice of deficiency, respondent disallowed the
claimed casualty loss because the insurance proceeds exceeded the
Boyles' allowable loss.  Respondent also disallowed the
depreciation deduction claimed for 1995, and petitioners have
conceded this adjustment.

OPINION

Section 165(a) and (c) allows a deduction for losses arising
from fire or other qualifying casualty sustained during the
taxable year and not compensated for by insurance or otherwise
(casualty loss).  See also sec. 1.165-7(a)(1), Income Tax Regs.
A casualty loss is "treated as sustained during the taxable year
in which the loss occurs as evidenced by closed and completed
transactions and as fixed by identifiable events occurring in

such taxable year." Sec. 1.165-1(d)(1), Income Tax Regs.; see also sec. 1.165-1(b), Income Tax Regs.

There is no dispute in this case as to the year in which the Boyles' casualty loss, if any, was sustained for purposes of section 165. Although the fire that destroyed the warehouse occurred in December 1993, the Boyles had a claim for insurance reimbursement which their insurer disputed. That claim was not settled until 1995. Because the amount of the insurance reimbursement could not reasonably be ascertained until the dispute was settled in 1995, the parties agree that the casualty loss in question, if any, was sustained in 1995.[6]

The issue we must decide focuses, instead, on the calculation of the Boyles' adjusted basis, an essential component of the casualty loss calculation. Section 1.165-7(b)(1), Income Tax Regs., provides that the amount of loss to be taken into account for purposes of section 165(a) is the lesser of either (i) the amount which is equal to the fair market value of the

---

[6]Even though a casualty occurs in an earlier year, any loss resulting from that casualty is not considered to be sustained under sec. 165 until it can be determined with reasonable certainty whether reimbursement for all or part of the loss will be received and in what amount. Gale v. Commissioner, 41 T.C. 269, 275 (1963); sec. 1.165-1(d)(2)(i), Income Tax Regs. When a reasonable prospect of recovery on a reimbursement claim exists but the amount of the reimbursement cannot be determined with reasonable certainty, a casualty loss is not sustained until the claim is settled, adjudicated or abandoned, thus enabling the taxpayer to calculate the amount of the loss, if any. Licht v. Commissioner, 37 B.T.A. 1096, 1100 (1938); Allied Furriers Corp. v. Commissioner, 24 B.T.A. 457, 460 (1931).

property immediately before the casualty reduced by the fair market value of the property immediately after the casualty or (ii) the amount of the taxpayer's adjusted basis prescribed in section 1.1011-1, Income Tax Regs., for determining the loss from the sale or disposition of the property involved. The amount determined is then reduced by any insurance or other compensation received to arrive at the deduction allowable. Sec. 165(a); sec. 1.165-1(c)(4), Income Tax Regs.; see also Helvering v. Owens, 305 U.S. 468 (1939); Pfalzgraf v. Commissioner, 67 T.C. 784 (1977); Millsap v. Commissioner, 46 T.C. 751 (1966), affd. on other issues 387 F.2d 420 (8th Cir. 1968); sec. 1.165-7(b)(3), Income Tax Regs.

The parties agree that the difference between the fair market value of the old warehouse before and after the fire is between $600,000 to $700,000 and that the Boyles received insurance reimbursement of $553,793. The parties disagree, however, regarding the calculation of the Boyles' adjusted basis in the old warehouse. Respondent contends that the Boyles' adjusted basis must be calculated as of December 13, 1993, the date the fire occurred, citing sections 1.165-7(b)(1) and 1.165-1(c)(4), Income Tax Regs., in support of his position. Petitioners reject respondent's argument, pointing out that the regulations cited by respondent do not state whether a taxpayer's adjusted basis is calculated as of the date the casualty occurred

or the date the casualty loss, if any, was deemed sustained. Petitioners urge us to conclude that (i) the Boyles' adjusted basis in the old warehouse must be calculated as of 1995, the year the casualty loss, if any, was sustained in this case and that (ii) the adjusted basis so calculated must include the cost of rebuilding the warehouse.

We agree with petitioners that neither section 1.165-1(c)(4) nor section 1.165-7(b)(1), Income Tax Regs., clearly states that a taxpayer's adjusted basis in property damaged or destroyed by casualty must be calculated as of the date of the casualty. The pertinent part of section 1.165-1(c)(4), Income Tax Regs., provides simply that, in determining the amount of loss actually sustained under section 165(a), proper adjustment must be made for any insurance received. The pertinent part of section 1.165-7(b)(1), Income Tax Regs., provides that the amount of the casualty loss to be taken into account under section 165(a) is the lesser of either (i) the amount equal to the fair market value of the property immediately before the casualty reduced by the fair market value immediately after the casualty or (ii) the amount of the adjusted basis prescribed in section 1.1011-1, Income Tax Regs., for determining the loss from the sale or other disposition of the property involved.[7]

---

[7]Sec. 1.1011-1, Income Tax Regs., provides that a taxpayer's basis in property shall be its cost, adjusted to the extent
(continued...)

We disagree with petitioners, however, that the failure of the above-cited regulations to specify when the adjusted basis of the property involved must be calculated means that petitioners are free to calculate the adjusted basis of the old warehouse by adding to it the cost of constructing the new warehouse. Although the above-cited regulations do not explicitly address the timing question posed by petitioners, the answer, we believe, flows from section 1.165-7(b)(1), Income Tax Regs.

Petitioners' calculation of the Boyles' adjusted basis in the old warehouse as of 1995 assumes that the new warehouse is merely an improvement of the old warehouse and that the cost of that improvement increases the Boyles' adjusted basis in the old warehouse for purposes of calculating their casualty loss under section 165(a). This assumption, which is critical to the success of petitioners' position, is incorrect because the record in this case clearly establishes that the old warehouse and the new warehouse were separate and distinct properties. Only the old warehouse was involved in the casualty on December 13, 1993, and it was completely destroyed before the new warehouse was even in existence.

---

[7](...continued)
provided by sec. 1016. Secs. 1.1016-2 and 1.1016-3, Income Tax Regs., provide that a taxpayer's cost basis must be increased by the cost of improvements and betterments made to property, and decreased by amortization, depreciation, and obsolescence.

Section 1.165-7(b)(1), Income Tax Regs., limits a deductible casualty loss under section 165(a) to the lesser of the decrease in value of property before and after the casualty or the adjusted basis of the "involved" property. The reference to "involved" property contained in section 1.165-7(b)(1), Income Tax Regs., must refer to the property damaged or destroyed by the casualty, i.e., the old warehouse, and the Boyles' adjusted basis in the old warehouse for purposes of calculating the casualty loss, if any, under section 165(a) must be its basis as of the date of the casualty.

Our conclusion is consistent with section 1033, which provides rules for determining whether gain realized upon the involuntary conversion of property must be recognized for Federal income tax purposes. A casualty is treated for Federal income tax purposes as an involuntary conversion of property. Sec. 1033(a); secs. 1.1033(a)-1 and 1.1033(a)-2(c), Income Tax Regs. Under section 1033(a)(2), if damaged or destroyed property is converted into money (e.g., through insurance), that conversion is treated as a sale or exchange of the damaged or destroyed property (the converted property), and the amount of gain, if any, realized on the conversion must be recognized except to the extent provided in section 1033(a)(2). If, however, the taxpayer reinvests the money received for the converted property to acquire qualified replacement property (i.e., property similar or

related in service or use to the converted property, section 1033(a)(2)(A)) within the period provided in section 1033(a)(2)(B), gain is recognized, if the taxpayer so elects, only to the extent the amount realized from the involuntary conversion of the converted property exceeds the cost of the qualified replacement property.[8]  Sec. 1033(a)(2)(A).  The basis of the replacement property acquired as a result of an involuntary conversion of the property into money is its cost, decreased by the amount of gain not recognized upon conversion. Sec. 1033(b).

An example used in section 1.1033(b)-1(b), Income Tax Regs., to illustrate the operation of section 1033(a)(2)(A) and (b) is consistent with our analysis:

> Example.  A taxpayer realizes $22,000 from the involuntary conversion of his barn in 1955; the adjusted basis of the barn to him was $10,000, and he spent in the same year $20,000 for a new barn which resulted in the nonrecognition of $10,000 of the $12,000 gain on the conversion.  The basis of the new barn to the taxpayer would be $10,000--the cost of the

---

[8]When an involuntary conversion results in the realization of gain, the details of the involuntary conversion, including those relating to the replacement of the converted property, must be reported in the return for the taxable year in which any of the gain is realized.  An election to defer the recognition of gain from the conversion under sec. 1033(a)(2) and sec. 1.1033(a)-2(c)(1), Income Tax Regs., is made by including such gain in gross income, but only to the extent required by sec. 1033, on the taxpayer's Federal income tax return for the first year the taxpayer is required to recognize the gain.  Sec. 1.1033(a)-2(c)(2), Income Tax Regs.  If sec. 1033 does not require a taxpayer to recognize any of the gain, the election is made simply by not including the gain in gross income.

new barn ($20,000) less the amount of the gain not
recognized on the conversion * * *[9]

Our conclusion is also reinforced by section 1.1033(a)-2(c)(12),

Income Tax Regs., which states that "An amount expended for

replacement of an asset, in excess of the recovery for loss,

represents a capital expenditure and is not a deductible loss for

income tax purposes."

When we treat the old warehouse and the new warehouse as

different properties, as sections 165 and 1033 require, the

determination of adjusted basis for purposes of calculating a

casualty loss under section 165(a) is straightforward.  The

Boyles' adjusted basis in the old warehouse for purposes of

---

[9]In the notice of deficiency, respondent applied a similar
analysis to calculate the Boyles' gain from the involuntary
conversion of the old warehouse and the Boyles' adjusted basis in
the new warehouse in accordance with sec. 1033(a)(2) and (b) as
follows:

<u>Gain realized on the involuntary conversion of
the old warehouse</u>:

| | |
|---|---|
| Amount realized from the involuntary conversion of the old warehouse | $553,793 |
| Less: | |
|    Adjusted basis | 33,408 |
| Gain realized | 520,385 |

<u>The Boyles' adjusted basis in the new warehouse</u>

| | |
|---|---|
| Total Cost of new warehouse | $702,702 |
| Less: | |
|    Gain realized but not recognized under sec. 1033(b) | 520,385 |
| Adjusted basis | 182,317 |

calculating gain or loss on its disposition, calculated in accordance with sections 1.1011-1, 1.1016-2, and 1.1016-3, Income Tax Regs., was their adjusted basis in the old warehouse as of the date of the casualty or $40,831.[10]

Summary

A taxpayer cannot deduct a casualty loss under section 165(a) unless his adjusted basis in the converted property exceeds the reimbursement received. United States v. Koshland, 208 F.2d 636, 639 (9th Cir. 1953); LaFavre v. Commissioner, T.C. Memo. 2000-297; Elliston v. Commissioner, T.C. Memo. 1973-4; sec. 1.165-7(b)(3), Examples (1) through (3), Income Tax Regs. Despite this well-established principle, petitioners urge us, in effect, to permit them to deduct as a casualty loss their entire unrecovered investment in both the old and new warehouses. This we cannot do for the reasons discussed herein. We hold that the cost of constructing the new warehouse does not increase the Boyles' adjusted basis in the old warehouse for purposes of section 165, and, therefore, the Boyles' adjusted basis in the

---

[10]In his opening brief, respondent notes that the revenue agent's calculation of the allowable casualty loss showed the Boyles' adjusted basis as $33,408. This figure was calculated (with a $1 discrepancy) by subtracting the 1994 depreciation deduction of $7,424 from $40,831, the Boyles' adjusted basis in the old warehouse as of the date of the fire. Respondent states that he does not concede that the 1994 depreciation deduction was proper, but he takes the position that the issue is immaterial because the insurance proceeds received exceed both $40,831 and $33,408.

old warehouse did not exceed the insurance recovery of $553,793.[11]  Accordingly, we sustain respondent's determination disallowing the Boyles' 1995 casualty loss.

We have carefully considered all remaining arguments made by petitioners for contrary holdings, and, to the extent not discussed, we find them to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.

---

[11]Petitioners failed to offer any evidence regarding the starting and completion dates of the reconstruction. Petitioners' position regarding the Boyles' adjusted basis for purposes of sec. 165 assumes that both the insurance recovery and the construction of the new warehouse occurred in 1995.  This assumption seems questionable, but we need not examine it further under the circumstances.