T.C. Memo. 2006-82


UNITED STATES TAX COURT


HARVEY L. HOOVER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 15557-99, 4590-00L.     Filed April 24, 2006.


Harvey L. Hoover, pro se.

<u>Diane L. Worland</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  These cases were consolidated for purposes of trial, briefing, and opinion.  On August 20, 1999, respondent issued a notice of deficiency, which determined deficiencies and penalties with respect to petitioner's Federal income taxes as follows:

|       |            | Penalty      |
| Year  | Deficiency | Section 6663 |
|-------|------------|--------------|
| 1989  | $46,052    | $34,539.00   |
| 1990  | 38,577     | 28,932.75    |
| 1991  | 52,452     | 39,339.00    |
| 1992  | 23,427     | 17,570.25    |

The issue for 1989 is whether petitioner has placed respondent's deficiency determination in issue. If he has, the next issue is whether assessment of the deficiency determined for 1989 is barred by the statute of limitations.

After concessions by the parties, the issues for decision in docket No. 15557-99 with respect to 1990, 1991, and 1992 are: (1) Whether petitioner received and failed to report substantial amounts of farm income for 1990, 1991, and 1992;[1] (2) whether

---

[1] Respondent calculated the farming income that petitioner failed to report on his Federal income tax returns as follows:

| Source               | 1990        | 1991        | 1992        |
|----------------------|-------------|-------------|-------------|
| Best Ever Dairy      | $137,801.38 | $93,768.46  | $108,817.49 |
| Jon Hayes            | 3,455.00    | 1,375.00    | 1,875.00    |
| Ag Max               | 17,208.11   | --          | --          |
| Roann                | 7,680.00    | 17,500.00   | 6,200.00    |
| Rochester Sale Barn  | 679.85      | 1,606.55    | 4,677.45    |
| Stony Pike           | 12,722.72   | 11,340.75   | 10,875.20   |
| Fred Hoover--Bartering | 5,569.32  | 7,598.75    | 4,743.32    |
| Fred Hoover--rent    | 10,500.00   | 2,475.00    | 2,475.00    |
| Total farm income    | 195,616.38  | 135,664.51  | 139,663.46  |
| Less reported ordinary farm income | 21,953.00 | 14,069.00 | 20,270.00 |
| Total unreported farm income | 173,663.38 | 121,595.51 | 119,393.46 |
| Less unreported capital gains | 13,402.57 | 12,947.30 | 15,552.65 |

(continued...)

petitioner received and failed to report interest income of $3,069 in 1990, $3,153 in 1991, and $8,784 in 1992; (3) whether petitioner is entitled to claim a loss of $31,000 in 1991 from the sale of one of his farms; (4) whether petitioner had farm expenses in amounts greater than allowed by respondent;[2] (5) whether petitioner is liable for additions to tax for fraud pursuant to section 6663[3] for each of the years in issue; and (6) whether the assessments for 1990, 1991, and 1992 are barred by the statute of limitations.

After concessions by the parties, the issues for decision in docket No. 4590-00L are: (1) Whether respondent's Appeals officer abused his discretion in sustaining the collection action

---

[1](...continued)
farm income

| | | | |
|---|---|---|---|
| Net unreported ordinary farm income | 160,260.81 | 108,648.21 | 103,840.81 |

[2] In the notice of deficiency, respondent determined that petitioner had farm expenses of $25,969 in 1990, $14,826 in 1991, and $27,524 in 1992. Respondent now acknowledges in the stipulation that petitioner's allowable farm expenses are $63,381 in 1990, $54,652 in 1991, and $55,388 in 1992.

[3] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

of filing a notice of Federal tax lien; and (2) whether respondent's Appeals officer abused his discretion in sustaining the collection action of issuance of a notice of jeopardy levy.[4]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the first, second, third, and fourth supplemental stipulations of facts, and the attached exhibits are incorporated herein by this reference. The stipulations of facts include transcripts and exhibits from petitioner's criminal prosecution, which commenced on March 16, 1998. The stipulations incorporate the trial testimony of the witnesses from the criminal prosecution as though it were given during the course of the trial in this Court.

The petition in docket No. 15557-99 was filed on September 28, 1999. The petition in docket No. 4590-00L was filed on April 25, 2000. When he filed the petitions in these cases, petitioner was incarcerated in a Federal penitentiary in Elkton, Ohio. Upon release from prison in 2002, petitioner resided in Wabash, Indiana.

Petitioner married Judith Ann Mosier on or about June 28, 1959. Michael Hoover and Tadd Hoover are two of the couple's children. Petitioner and Ms. Mosier divorced on July 25, 1990.

_____

[4] The taxes involved in the collection action are the income tax liabilities for 1989, 1990, 1991, and 1992 that are in issue in docket No. 15557-99.

## Farm Business

From the 1970s through 1992, farming was petitioner's primary source of income. Michael Hoover and Tadd Hoover worked for petitioner during the years in issue.

Beginning in the late 1970s and continuing through 1992, petitioner's farming activities included a dairy herd operation. During the years at issue, petitioner's dairy herd consisted of approximately 60 cows, 30 heifers, and 17 calves. Petitioner sold all the milk produced by his dairy herd to Best Ever Dairy of Anderson, Indiana (Best Ever Dairy), from 1989 to 1992.[5]

Before October 31, 1988, Best Ever Dairy issued one check made payable to petitioner for each milk purchase. By letter dated September 27, 1988, petitioner instructed Best Ever Dairy to issue two checks for each milk purchase. Petitioner directed Best Ever Dairy to issue one check payable to Michael Hoover in an amount equal to one-half of the amount due and a second check payable to petitioner for the balance. Best Ever Dairy complied with petitioner's instructions beginning with its payment made on October 31, 1988. Petitioner did not give any of the milk proceeds to Michael Hoover.

After petitioner's September 27, 1988, letter, petitioner sent an undated letter to Best Ever Dairy that revised the

---

[5] From 1988 to 2003, Best Ever Dairy has been known as Best Ever Dairy, East Side Jersey Dairy, and Prairie Farms Dairy.

payment method.  Petitioner directed Best Ever Dairy to issue one check payable to petitioner in the amount of $10 and a second check payable to Tadd Hoover in an amount equal to the balance due.  Petitioner also instructed Best Ever Dairy to mail both checks to petitioner.  From August 30, 1990, through December 31, 1992, Best Ever Dairy followed petitioner's instructions.

The milk proceeds belonged to petitioner.  When Tadd Hoover received checks from Best Ever Dairy, he endorsed the checks and gave them to petitioner.  Sometime after petitioner told Best Ever Dairy to split the milk sales checks between Harvey Hoover and Michael Hoover or Tadd Hoover, petitioner advised Michael that he was reporting all of the milk sales on his tax returns and paying the taxes due on the milk sales.

Petitioner's milk sales to Best Ever Dairy were computed by Best Ever Dairy in terms of gross sales from which it deducted certain expenses attributable to petitioner and remitted the net amount to petitioner.  Petitioner received milk sale proceeds from Best Ever Dairy as follows:

| Year | Gross Sales | Expenses | Net Sales |
|------|-------------|----------|-----------|
| 1990 | $146,416.57 | $8,615.19 | $137,801.38 |
| 1991 | 101,047.40 | 7,278.94 | 93,768.46 |
| 1992 | 117,274.22 | 8,456.73 | 108,817.49 |

The above-stated expenses consisted of hauling, market orders, NDPRB, CCC, and Cream LIC expenses.[6]

Petitioner also sold cattle as part of his farming business. During the years in issue, Jon Hayes or his father Porter Hayes (the Hayeses) purchased male calves from petitioner. The Hayeses typically paid petitioner $100 to $125 per calf. When Jon Hayes purchased cattle from petitioner, he always left the payee's name blank. The checks with which the Hayeses purchased the cattle were ultimately made payable to petitioner or Michael Hoover in amounts totaling $3,455 in 1990, $1,375 in 1991, and $375 in 1992.[7] The checks from the Hayeses were as follows:

| Year Issued | Check No. | Payee | Amount |
|---|---|---|---|
| 1990 | 112 | Harvey Hoover | $770 |
| 1990 | -- | Harvey Hoover | 550 |
| 1990 | 106 | Harvey Hoover | 900 |
| 1990 | 109 | Harvey Hoover | 770 |
| 1990 | 116 | Harvey Hoover | 250 |
| 1990 | 121 | Harvey Hoover | 275 |
| 1991 | 226 | Harvey Hoover | 500 |
| 1991 | 232 | Harvey Hoover | 375 |
| 1991 | 2448 | Mike Hoover | 250 |
| 1991 | 2473 | Michael Hoover | 125 |

---

[6] The parties did not explain the expenses listed as NDPRB, CCC, and Cream LIC.

[7] Respondent asserts that petitioner received income in 1992 of $1,875 from the sale of calves to the Hayeses. The record contains only one canceled check from 1992; the Hayeses issued a $375 check to petitioner in 1992. Respondent relies on a summary exhibit prepared and used by a revenue agent in the criminal prosecution of petitioner to argue that petitioner received $1,875 from the Hayeses in 1992. We find that petitioner received $375 from the Hayeses in 1992.

| | | | |
|---|---|---|---|
| 1991 | 240 | Michael Hoover | 125 |
| 1992 | 219 | Harvey Hoover | 375 |

Petitioner also sold dairy cattle through Rochester Sale Barn in 1990, 1991, and 1992. Although Rochester Sale Barn issued checks to either Tadd Hoover or Michael Hoover, petitioner received the proceeds from the checks. Petitioner's gross sales, expenses, and net sales from Rochester Sale Barn were as follows:

| Year | Gross Sales | Expenses | Net Sales |
|---|---|---|---|
| 1990 | $698.60 | $18.75 | $679.85 |
| 1991 | 1,643.15 | 36.60 | 1,606.55 |
| 1992 | 4,793.80 | 116.35 | 4,677.45 |

Respondent concedes that these amounts should be given capital gains treatment.

From 1987 through 1992, petitioner also sold livestock through the Stony Pike Livestock Auction (Stony Pike). Although Stony Pike issued most of the checks to Tadd Hoover,[8] Tadd Hoover endorsed the checks and then gave them to petitioner. The gross income, expenses, and net sales with respect to these livestock sales were as follows:

| Year | Gross Sales | Expenses | Net Sales |
|---|---|---|---|
| 1990 | $13,042.60 | $319.88 | $12,722.72 |
| 1991 | 11,588.55 | 247.80 | 11,340.75 |
| 1992 | 11,113.50 | 238.30 | 10,875.20 |

---

[8] Of the 20 checks in the record, 17 checks were issued to Tadd Hoover, 2 checks were issued to Michael Hoover, and 1 check was issued to petitioner.

Respondent concedes that these amounts should be given capital gains treatment.

Petitioner's farming operation also included the planting and harvesting of corn during the years 1989 through 1992. On August 21, 1990, Ag Max, a grain elevator that buys and sells grain, issued a $17,208.11 check to Tadd Hoover and Michael Hoover for the purchase of 6,104.42 bushels of petitioner's corn.

From 1989 through 1992, petitioner stored corn at, and bought cattle feed from, Roann Farm Center, Inc. (Roann), a grain elevator and feed operation in Wabash, Indiana. Petitioner maintained his corn inventory held in storage with Roann in the name of Michael Hoover or Tadd Hoover. Roann paid petitioner $7,680 on April 25, 1990, $17,500 on April 15, 1991, and $6,200 on February 4, 1992, for shelled corn. These payments were made by checks payable to Michael Hoover in 1990, Tadd Hoover in 1991, and petitioner in 1992.

Petitioner's brother, Fred Hoover, also engaged in farming. Fred Hoover rented farm land from petitioner during the years in issue. Fred Hoover paid rent to petitioner of $10,500 in 1990, $2,475 in 1991, and $2,475 in 1992.

Petitioner and Fred Hoover also practiced a bartering system in which they exchanged goods and services. Fred Hoover maintained an account of debts due to and owed by petitioner during the years in issue. These records reflect that Fred

Hoover paid petitioner for the excess of goods and services
provided by petitioner as follows:

| Year Goods and Service Provided | Amount | Date Check Issued |
|---|---|---|
| 1990 | $5,569.32 | 2/1/91 |
| 1991 | 7,598.75 | 1/22/92 |
| 1992 | 4,743.32 | 2/3/93 |

Interest Income

In 1990, 1991, and 1992, petitioner received interest income
as follows:

| Source | 1990 | 1991 | 1992 |
|---|---|---|---|
| Bank One | $583 | -- | -- |
| Fidelity Federal | 188 | -- | -- |
| First Merchants Bank | 139 | $814 | $512 |
| Bureau of Public Debt (U.S. savings bonds) | -- | 80,468 | -- |
| Ft. Wayne National Bank CDs | -- | -- | 6,317 |
| Lafayette Life Ins. Co. | -- | -- | 13 |
| Tucker Land Contract | 2,930 | 2,339 | 1,942 |
| Total | [1]3,840 | 83,621 | 8,784 |

[1] The parties have stipulated that petitioner received
interest income of $3,979 in 1990. For purposes of this opinion,
we shall use $3,840 as the amount of petitioner's 1990 interest
income.

Tax Returns

Petitioner timely filed Forms 1040, U.S. Individual Income
Tax Return, for the years 1989, 1990, 1991, and 1992. Joyce
Rouse, a tax return preparer at H&R Block, prepared petitioner's
1989 and 1990 returns. Petitioner provided Ms. Rouse with lists
of his total income and expenses, but he did not have supporting

documents.  Petitioner did not maintain books and records for his farm business.

Ms. Rouse prepared petitioner's 1991 tax return that reported a tax due of $2,254.  Petitioner did not file that return; instead, he filed a return showing that he was owed a refund of $405.

On his income tax returns, petitioner reported gross income from farming of $35,551 in 1989, $21,953 in 1990, $14,069 in 1991, and $20,700 in 1992.  On his Schedules F, Farm Income and Expenses, petitioner reported his gross income from farming as follows:

| Year | Source | Amount |
| --- | --- | --- |
| 1989 | Sale of livestock, produce, grains, and other products raised | $14,636 |
| | Agricultural program payments | 20,596 |
| | Other income, including Federal and State gasoline or fuel tax credit or refund | 319 |
| 1990 | Sale of livestock, produce, grains, and other products raised | 12,426 |
| | Agricultural program payments | 5,585 |
| | Crop insurance proceeds and certain disaster payments | 3,708 |
| | Other income, including Federal and State gasoline or fuel tax credit or refund | 234 |
| 1991 | Sale of livestock, produce, grains, and other products raised | 13,788 |
| | Other income, including Federal and State gasoline or fuel tax credit or refund | 281 |
| 1992 | Sale of livestock, produce, grains, and other products raised | 19,865 |

| Other income, including Federal and State gasoline or fuel tax credit or refund | 405 |
|---|---|

On his income tax returns for 1990, 1991, and 1992, petitioner claimed expenses on Schedules F as follows:

|  | 1990 | 1991 | 1992 |
|---|---|---|---|
| Fertilizers & lime | $6,124 | $7,980 | $7,260 |
| Gasoline, fuel & oil | 2,640 | 2,875 | 3,251 |
| Insurance | 859 | 1,025 | 825 |
| Repairs & maintenance | 937 | 4,545 | 1,987 |
| Seeds & plants | 1,661 | 1,235 | 1,359 |
| Supplies | 879 | 1,462 | 1,162 |
| Custom hire (Machine Work) | 2,565 | 2,990 | 2,540 |
| Other expenses | 954 | 196 | 104 |
| Depreciation | 7,871 | 5,622 | 4,016 |
| Mortgage interest | 11,575 | 10,670 | -- |
| Utilities | -- | -- | 4,470 |
| Taxes | 1,348 | 1,226 | 891 |
| Total | 37,413 | 39,826 | 27,865 |

Petitioner reported net farming losses of $7,600 in 1989, $15,460 in 1990, $25,757 in 1991, and $7,595 in 1992.  After concessions, respondent agrees that petitioner incurred allowable farm expenses in 1990, 1991, and 1992 as follows:[9]

|  | 1990 | 1991 | 1992 |
|---|---|---|---|
| Feed | $32,947 | $25,123 | $18,403 |
| Fertilizers & lime | 188 | 1,850 | 4,508 |
| Gasoline, fuel & oil | 2,544 | 713 | 2,060 |
| Insurance | 504 | 504 | 504 |
| Repairs & maintenance | 762 | 368 | 148 |
| Straw | 240 | -- | 3,208 |
| Veterinary | 207 | -- | -- |
| Seeds & plants | 540 | -- | 1,062 |

---

[9] These allowable expenses are in addition to the Best Ever Dairy, Rochester Sale Barn, and Stony Pike expenses netted against income.

| | | | |
|---|---|---|---|
| Supplies | 31 | 616 | 179 |
| Milk expense | 391 | -- | -- |
| Custom hire | 2,188 | 1,068 | 3,476 |
| Depreciation | 20,910 | 14,293 | 11,986 |
| Rent | -- | 8,260 | 9,456 |
| Taxes | 1,929 | 1,857 | 398 |
| Total | 63,381 | 54,652 | [1]55,388 |

[1] The parties have stipulated that respondent determined that petitioner incurred allowable expenses totaling $55,389 in 1992.  The $1 overstatement is due to rounding.  For purposes of this opinion, we shall use $55,389 as the amount of petitioner's 1992 allowable expenses.

Capital Loss

On his 1991 Federal income tax return, petitioner claimed a $31,000 loss.  On Form 4797, Sales of Business Property, petitioner reported that the farm was sold for $75,000 on January 20, 1991.  Form 4797 also shows that petitioner's basis in the farm property was $106,000.  Respondent disallowed the claimed loss and increased petitioner's taxable income by $31,000.[10]

Investigation

Petitioner did not submit any books or records to respondent's agents during the course of the examination of his income tax returns.  During the examination, respondent requested the production of certain documents regarding an investigation of petitioner from Ms. Shirley Harrell, an H&R Block employee.  Petitioner contacted Ms. Harrell after she received the request

---

[10] Respondent's notice of deficiency shows this item as an increase in income with no explanation.

and asked that she not produce any of his returns from the 1998 tax year and earlier because the returns could cause him problems because of a divorce.

Criminal Proceedings

Petitioner was indicted for willfully filing false returns for 1990, 1991, and 1992 that understated his true income. On March 19, 1998, a jury found petitioner guilty of three counts of filing false Federal income tax returns for 1990, 1991, and 1992.[11] On July 24, 1998, the U.S. District Court filed its judgment in the criminal case regarding petitioner (judgment). The judgment included petitioner's terms of imprisonment, supervised release, standard conditions of supervision, and restitution. In the restitution portion of the judgment, the District Court ordered petitioner to

> take, by August 7, 1998, all steps necessary to turn over to the United States government full title to 304 United States Savings Bonds with face values of $1,000.00 each in the names of Michael and Tadd Hoover. The United States Attorney's Office shall ensure this turnover, and then shall itself turn the bonds over to the United States District Court Clerk * * * for application to the following: first, to the expenditures on Mr. Hoover's behalf as ultimately computed under the Criminal Justice Act (for attorney and accountant services, including appellate attorney fees), then to the costs of prosecution in the sum of $3,191.77, then to Purdue University, Division of

---

[11] Petitioner was also charged with and convicted on one count of making false statements on a student loan application.

> Financial Aid * * * in the sum of $13,543.00 and finally, the remainder shall be distributed to the Internal Revenue Service for application to Mr. Hoover's tax liability.

Petitioner failed to turn over the 304 U.S. saving bonds to the U.S. Attorney's Office on or before August 7, 1998.

The U.S. attorney filed a motion for an order to show cause why petitioner should not be held in contempt of the District Court's restitution order by failing to turn over the 304 U.S. Saving Bonds. On September 18, 1998, the District Court conducted a trial on the Government's motion. The District Court held that petitioner was in contempt of the court's March 19, 1998, order "when he transferred--using that in its ordinary English sense--150 United States savings bonds with a face value of $1,000 to Michael Hoover after having been expressly ordered in this courtroom on March 19, 1998, not to do so." The District Court then ordered that petitioner "is committed to the Bureau of Prisons for a term of six months, to be served consecutively to the sentence heretofore imposed in this cause."

On September 22, 1998, Michael Hoover turned over 165 U.S. savings bonds to the U.S. Attorney's Office. On September 23, 1998, Michael Hoover turned over 52 U.S. savings bonds to the U.S. Attorney's Office. Also on September 23, 1998, Michael Hoover informed the U.S. attorney that he had cashed 12 of the U.S. savings bonds; however, he did not turn over the proceeds of these savings bonds to the U.S. attorney. On January 11, 1999,

Michael Hoover turned over 60 U.S. savings bonds to the U.S. Attorney's Office.  The U.S. attorney turned over 277 U.S. savings bonds to the District Court clerk's office for liquidation.  The clerk of the District Court liquidated the U.S. savings bonds and received proceeds of $236,925.60.  On June 30, 1999, respondent served a notice of jeopardy levy on the clerk of the District Court for the proceeds of the savings bonds minus the restitution claims.

Petitioner appealed his conviction, sentence, and restitution order to the Court of Appeals for the Seventh Circuit.  The Court of Appeals affirmed petitioner's conviction but modified the U.S. District Court's restitution order, finding that the District Court exceeded its authority when it ordered petitioner to surrender savings bonds to pay his tax liability. United States v. Hoover, 175 F.3d 564 (7th Cir. 1999). Petitioner also appealed his contempt order to the Court of Appeals for the Seventh Circuit, which affirmed the District Court's contempt order.  United States v. Hoover, 240 F.3d 593 (7th Cir. 2001).  Then petitioner sought a reversal of his conviction and sentences for filing false Federal income tax returns and making false statements on a student loan application on the grounds that he received ineffective assistance of counsel.  The Court of Appeals affirmed petitioner's conviction. Hoover v. United States, 6 Fed. Appx. 414 (7th Cir. 2001).

On September 20, 1999, petitioner's attorney in his criminal case filed a letter with the clerk of the District Court that stated that the Court of Appeals for the Seventh Circuit had modified petitioner's restitution order. The District Court modified its judgment order "by deleting the requirement that * * * [petitioner] make restitution to the Internal Revenue Service and the requirement that U.S. Savings Bonds be held for that purpose."

The District Court ordered disbursement of the proceeds held by the clerk of the District Court from the liquidation of the U.S. savings bonds as follows: (1) $6,754.65 for attorney's fees, (2) $8,200 for accounting services, (3) $1,150 for expert testimony fees, and (4) $3,191.77 for the costs of prosecution. The District Court ordered the clerk to release the remaining funds. After payment of restitution to all claimants except respondent, the remaining proceeds of $209,916.51 were paid to respondent on February 29, 2000, pursuant to the notice of jeopardy levy.

On February 28, 2001, Michael Hoover and Tadd Hoover filed a letter with the District Court requesting it to order the U.S. Attorney's Office to deliver to them the U.S. savings bonds that were surrendered to the court clerk. On April 16, 2001, the U.S.

District Court entered an order declining to take any action in response to the letter submitted by Michael Hoover and Tadd Hoover.

Collection Actions

On June 28, 1999, respondent made a jeopardy assessment of petitioner's deficiencies, and penalties for 1989, 1990, 1991, and 1992. On that same date, respondent sent to petitioner a Notice of Jeopardy Levy and Right of Appeal, which stated:

> I am notifying you that I have found that you have consistently attempted to conceal your reportable income and assets through the use of nominees, thereby putting our collection of the income tax you owe for the tax period(s) in jeopardy. Therefore, * * * I have approved the issuance of a levy to collect the amount your [sic] owe, although we have not provided you a notice of intent to levy and/or notice of your right to a hearing, generally required by Sections 6330 and 6331 * * *

Respondent's notice of jeopardy levy and right to appeal informed petitioner that he was entitled to request (1) an administrative review under section 7429 and (2) a collection due process hearing pursuant to section 6330.

Two days later, respondent sent a letter to petitioner informing him that respondent had made a jeopardy assessment pursuant to section 6861 regarding petitioner's tax years 1989, 1990, 1991, and 1992. The letter notified petitioner that respondent has "found you [petitioner] consistently attempted to conceal your reportable income and assets through the use of nominees, thereby tending to prejudice or render ineffectual

collection of income tax for the periods of 1989 through 1992."
The letter also advised petitioner of his appeal rights pursuant
to section 7429.

On June 30, 1999, respondent filed a notice of Federal tax
lien in the Wabash, Indiana County Recorder's Office regarding
jeopardy assessments of income taxes, interest, and penalties for
1989, 1990, 1991, and 1992. On July 5, 1999, respondent sent to
petitioner a Letter 3172, Notice of Federal Tax Lien Filing and
Right to a Hearing Under IRC Section 6320, regarding petitioner's
1989, 1990, 1991, and 1992 tax years.

Petitioner executed and mailed to respondent a Form 12153,
Request for a Collection Due Process Hearing, dated July 23,
1999. In that Request for a Collection Due Process Hearing,
petitioner appealed both the notice of Federal tax lien and the
notice of levy. On September 13, 1999, the Appeals officer sent
a letter to petitioner establishing a conference date of October
20, 1999. By letter dated September 22, 1999, petitioner
requested that the conference be moved to Cleveland, Ohio, where
he was incarcerated.

Sometime between December 8, 1999, and January 11, 2000,
respondent's Appeals officer and petitioner conducted a telephone
conference regarding petitioner's request for a hearing. During
the telephone conference, petitioner did not question the amounts
of gross income respondent determined for 1990, 1991, and 1992.

Instead, petitioner asserted that his expenses were too low and that he was taxed using the incorrect rate of tax.  Petitioner also informed respondent's Appeals officer that he could not pay the income taxes, interest, and penalties assessed for 1990, 1991, and 1992.  During the telephone discussions, petitioner and the Appeals officer did not discuss collection alternatives.

By letter dated January 11, 2000, the Appeals officer confirmed that a telephone conference had occurred, and the Appeals officer canceled the proposed face-to-face meeting.  The letter also contained respondent's proposed findings and invited petitioner to contact the Appeals officer to arrange further telephone discussions if he had any questions.  Petitioner did not contact the Appeals officer after receiving the January 11, 2000, letter.  On March 23, 2000, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 to petitioner regarding his unpaid income taxes for 1989, 1990, 1991, and 1992.

OPINION

## I.  <u>Burden of Proof</u>

Generally, the Commissioner's determinations in a notice of deficiency are presumed to be correct, and the taxpayer bears the burden of proving that the Commissioner's determinations are erroneous.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

Section 7491(a) shifts the burden of proof to the Commissioner when the taxpayer has satisfied certain requirements. Section 7491 is effective with respect to court proceedings arising in connection with examinations commencing after July 22, 1998. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c)(1), 112 Stat. 727. Respondent concedes that the examination in these cases began after July 22, 1998.

Specifically, section 7491(a)(1) provides:

If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.

Section 7491(a)(2) further provides that the burden of proof shifts to the Commissioner only when the taxpayer has: (1) "complied with the requirements under this title to substantiate any item", and (2) "maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews".

Petitioner failed to maintain books and records relating to his farming business. Furthermore, the parties have stipulated that petitioner did not submit any books or records to respondent's agents during the examination of his 1990, 1991, and 1992 income tax returns. Because petitioner failed to satisfy

the requirements of section 7491(a)(2), we find that the burden of proof does not shift to respondent pursuant to section 7491(a)(1). However, as explained infra, respondent has the burden of proving fraud for purposes of the section 6663 penalty and the section 6501(c) exception to the 3-year statute of limitations for assessment.[12]

II. 1989--Statute of Limitations

Petitioner argues that respondent assessed the 1989 deficiency after the period of limitations had expired. Specifically, with respect to the 1989 taxable year, petitioner argues on brief that "The assessments for 1989 were not within 3 yrs next to the year of investigation. The Internal Revenue Service assessment date were [sic] June 28, 1999".

Respondent argues that "Petitioner did not dispute the deficiency for tax year 1989 in his petition". We disagree. Petitioner was not represented by counsel. His petitions are not models of clarity. However, it seems to us that the best reading is that he was contesting respondent's deficiency determinations for all years in the notice of deficiency. The petition in docket No. 15557-99 was filed using a preprinted Government form. Paragraph 3 of the form had space for listing only 3 years of disputed deficiencies. In paragraph 3 of his petition filed in

---

[12] The Commissioner bears the burden of proving fraud by clear and convincing evidence. Secs. 7454(a), 7491(c); Rule 142(b).

docket No. 15557-99, petitioner lists the years 1990, 1991, and 1992 and the amounts in dispute for those years. However, in paragraph 4 of the form, which is entitled "Set forth those adjustments, i.e. changes, in the NOTICE OF DEFICIENCY with which you disagree and why you disagree", petitioner states that "The Tax Year December 31, 1989 doesn't count. $46,052.00 Tax 34,539.00 Addition to". In docket No. 4590-00L, petitioner claims in paragraph 4 of the same type of preprinted form petition that "the Tax Years December 31, 1989 and December 31, 1990 is [sic] past the Statute of limitations."

Petitioner has consistently argued that the assessment of the 1989 deficiency was barred by the statute of limitations. In his pretrial memorandum, petitioner stated: "It is not to be over-looked that the IRS also added alleged tax deficiency(s) for Tax Year 1989, for approximately $46,000.00; being even further beyond the statute of limitations." At trial, petitioner testified: "And they even had 1989 as part of the deficiency and that was past the limit because you can only go back three years from the time that the investigation started. So 1989 would have been past the statute of limitations." Finally, in his answering brief, petitioner argued that "The assessments for 1989 were not within 3 yrs next to the year of investigation. The Internal Revenue Service assessment date * * * [was] June 28, 1999." We

conclude that petitioner has placed the deficiency for the year 1989 in dispute by raising the statute of limitations.

Section 6501(a) generally provides that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed". The only apparent exception that might apply here is that contained in section 6501(c).[13] Section 6501(c)(1) provides an exception to the general 3-year period of limitations: "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time." Respondent bears the burden of proving by clear and convincing evidence that petitioner filed a false or fraudulent tax return. Sec. 7454(a); Rule 142(b). Respondent makes no argument that he has proven fraud or that any other exception applies with respect to petitioner's 1989 liability. Respondent failed to offer evidence relating to petitioner's 1989 tax liability. The canceled checks, invoices, receipts, and testimony from the criminal proceeding that were admitted into evidence primarily relate to petitioner's 1990, 1991, and 1992 tax years. Since respondent failed to offer evidence of fraud

---

[13] Sec. 6501(e) extends the period of limitations to 6 years when the taxpayer omits amounts properly includable in gross income and the omitted amounts exceed 25 percent of the reported gross income. Sec. 6501(e) does not apply here because respondent issued the notice of deficiency on Aug. 20, 1999, which is more than 6 years after petitioner timely filed his 1989 income tax return.

regarding petitioner's 1989 tax year, we hold that assessment of any deficiency regarding 1989 is barred by the 3-year period of limitations contained in section 6501(a).

III.  1990, 1991, and 1992

Respondent argues that petitioner failed to report farm income of $173,663.38 in 1990, $121,595.51 in 1991, and $119,393.46 in 1992.[14]  Generally, petitioner argues that respondent committed injustice against him in this case.[15] Petitioner asserts that he did not receive the income respondent determined, and that he incurred farm expenses that exceeded the amounts respondent allowed.  Finally, petitioner contends that his assets were sold in the divorce proceeding and that he lost $156,000 from the sale of his assets.

A.  Unreported Gross Income

Section 61(a) provides that "gross income means all income from whatever source derived," and specifically includes "Gross income derived from business".  Section 6001 requires that taxpayers maintain books and records sufficient to establish

---

[14] These amounts include both ordinary farm income and capital gains income.  Respondent asserts that petitioner's capital losses will offset the capital gains income, and the capital gains income will not result in additional tax.

[15] Petitioner asserts that he did not receive the income determined by respondent, and warns:  "I have been taxed on Income I didn't receive and will never receive.  If something is not done I will go public with this including congress, senators, Television, Newspapers."

their gross income.  When a taxpayer fails to keep the required books and records, section 446 authorizes the Commissioner to "reconstruct income in accordance with a method which clearly reflects the full amount of income received."  Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989); accord DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Parks v. Commissioner, 94 T.C. 654, 658 (1990).

Using the specific items method, respondent reconstructed petitioner's gross income for 1990, 1991, and 1992 from bank records and third-party payor records.  Respondent's method accurately reflects petitioner's gross income because the method calculated petitioner's income using proceeds that he received from his farming business.  Even though some of the canceled checks and invoices list Tadd Hoover or Michael Hoover as the payee, we agree with the Court of Appeals for the Seventh Circuit that these proceeds were actually petitioner's gross income[16] and that petitioner "instructed creditors to write checks made out to his sons, but kept all the proceeds for himself."  United States v. Hoover, 175 F.3d at 567.

---

[16] Tadd Hoover testified that the checks that he received from the family business were not his.  Tadd Hoover further testified that he "would sign the back of * * * [the checks] and let dad do whatever he wanted with them."  The parties stipulated that the testimony of Tadd Hoover from petitioner's criminal proceeding is incorporated as though given during the course of the trial of the U.S. Tax Court cases.

In his farming business, petitioner received gross receipts from the sale of milk, livestock, corn, and shelled corn. The evidence, including copies of canceled checks, settlement sheets, receipts, invoices, and the testimony from petitioner's criminal proceeding, clearly and convincingly establishes that petitioner failed to report gross income from his farming business.

We adjust respondent's calculation of petitioner's total unreported farming income with respect to the bartering income he received from Fred Hoover. Respondent determined that petitioner received bartering income of $5,569.32 in 1990, $7,598.75 in 1991, and $4,743.32 in 1992. The records of Fred Hoover reflect that in 1991 he issued a $5,569 check to petitioner for the excess of goods and services attributable to 1990. Because petitioner received the check for $5,569 in 1991, petitioner failed to report this income in 1991, not in 1990 as respondent argues. See secs. 446(c), 451(a). These records also show that in 1992 Fred Hoover issued a $7,598.75 check to petitioner for the excess of goods and services attributable to 1991. Petitioner failed to report this $7,598.75 in 1992, the year in which he received this payment. In 1993, Fred Hoover issued a $4,743.32 check to petitioner for the excess of goods and services attributable to 1992. Because petitioner received the check relating to the 1992 bartering income in the 1993 taxable year, we find that the bartering income of $4,743.32 is not

included in his unreported income in 1992. Fred Hoover did not issue any of the checks in 1990; therefore, petitioner did not receive any bartering income in 1990.

We hold that petitioner received and failed to report total farming income of $168,094.06 in 1990, $119,566.08 in 1991, and $120,748.89 in 1992.[17] The farming income that petitioner failed to report is itemized as follows:

| Source | 1990 | 1991 | 1992 |
|---|---|---|---|
| Best Ever Dairy | $137,801.38 | $93,768.46 | $108,817.49 |
| Jon Hayes | 3,455.00 | 1,375.00 | 375.00 |
| Ag Max | 17,208.11 | -- | -- |
| Roann | 7,680.00 | 17,500.00 | 6,200.00 |
| Rochester Sale Barn | 679.85 | 1,606.55 | 4,677.45 |
| Stony Pike | 12,722.72 | 11,340.75 | 10,875.20 |
| Fred Hoover--bartering | -- | 5,569.32 | 7,598.75 |
| Fred Hoover--rent | 10,500.00 | 2,475.00 | 2,475.00 |
| Total farm income | 190,047.06 | 133,635.08 | 141,018.89 |
| Less reported ordinary farm income | 21,953.00 | 14,069.00 | 20,270.00 |
| Total unreported farm income | 168,094.06 | 119,566.08 | 120,748.89 |

B. Interest Income

On brief, petitioner argues that he did not receive interest income. The stipulation of facts and the attached exhibits show that petitioner received interest income of $3,840 in 1990,[18]

---

[17] Respondent concedes that the following amounts of the unreported farm income from the sale of breeding stock to the Rochester Sale Barn and Stony Pike should be given capital gains treatment: $13,402.57 in 1990, $12,947.30 in 1991, and $15,552.65 in 1992.

[18] The stipulation of facts states that petitioner received interest income totaling $3,979 in 1990. This appears to be a mathematical error.

$83,621 in 1991, and $8,784 in 1992. Petitioner reported interest income on his tax returns of $771 in 1990 and $80,468 in 1991. Petitioner did not report any interest income in 1992. Accordingly, we sustain respondent's determinations that petitioner failed to report interest income of $3,069 in 1990, $3,153 in 1991, and $8,784 in 1992.

C.  Business Expenses

Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Taxpayers are required to maintain records that substantiate the amounts of claimed deductions. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Taxpayers bear the burden of proving that they are entitled to any claimed deductions. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Respondent now agrees that petitioner is entitled to deduct farm expenses of $63,381 in 1990, $54,652 in 1991, and $55,389 in 1992, which are in excess of the amounts petitioner claimed on his returns. Despite petitioner's claim that he "had farm expenses greater than allowed by respondent", petitioner failed to offer any documents, records, or other evidence to support his assertion. We hold that petitioner is entitled to deduct business expenses in 1990, 1991, and 1992 only as determined by respondent.

D.   Capital Loss

Petitioner claimed a capital loss of $31,000 on his 1991 tax return.  On brief, petitioner now asserts that he is entitled to a capital loss of $48,000, which resulted from the sale of his farm.

The taxpayer bears the burden of proving the loss claimed. Rule 142(a).  "Where the taxpayer does not prove basis this Court has consistently held that his loss cannot be computed."  Millsap v. Commissioner, 46 T.C. 751, 760 (1966), affd. 387 F.2d 420 (8th Cir. 1968).

Petitioner offered only his tax returns and a letter prepared by his certified public accountant as evidence of the claimed capital loss.[19]  "The Commissioner need not accept as complete, correct, and accurate, the returns filed or the sworn statement of the taxpayer that his returns completely and correctly disclose his tax liability."  Halle v. Commissioner, 7 T.C. 245, 250 (1946), affd. 175 F.2d 500 (2d Cir. 1949).  The documents fail to establish the basis in the farm property or the amount that petitioner realized from the sale of that property. Therefore, we sustain respondent's determination that petitioner is not entitled to a capital loss of $31,000.

_____

[19] Petitioner's certified public accountant did not support his letter and computation with documentation.

IV.  Fraud Penalty--Section 6663

Section 6663(a) provides that "If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud."  The Commissioner bears the burden of proving fraud by clear and convincing evidence.  Sec. 7454(a); Rule 142(b).  The Commissioner cannot satisfy his burden of proving fraud by relying upon the taxpayer's failure to establish error in the determination of deficiencies.  Parks v. Commissioner, 94 T.C. at 660-661.  To prove fraud, the Commissioner must establish that (1) an underpayment exists and (2) some portion of the underpayment is attributable to fraud.  DiLeo v. Commissioner, 96 T.C. at 873.

As stated supra, we find that respondent has clearly and convincingly proven that petitioner received and failed to report income from his farming business in 1990, 1991, and 1992.  If the Commissioner proves that any portion of an underpayment of tax is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except that when the taxpayer establishes by a preponderance of the evidence that any portion of the underpayment was not attributable to fraud, the fraud

penalty shall not apply to that portion of the underpayment.
Sec. 6663(b).

"Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing." DiLeo v. Commissioner, supra at 889 (citing Profl. Servs. v. Commissioner, 79 T.C. 888, 930 (1982)). To prove fraud, the Commissioner "must show that * * * [the taxpayer] intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes." Petzoldt v. Commissioner, 92 T.C. at 699 (citing Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968)). Because direct evidence of a taxpayer's intent is rarely available, the Commissioner may prove fraudulent intent using circumstantial evidence. Spies v. United States, 317 U.S. 492, 499 (1943); DiLeo v. Commissioner, supra at 874; Parks v. Commissioner, supra at 664; Petzoldt v. Commissioner, supra. We consider the taxpayer's entire course of conduct in determining fraud, and we may draw reasonable inferences from the facts. Parks v. Commissioner, supra at 664; Otsuki v. Commissioner, 53 T.C. 96, 106 (1969).

The indicia or badges of fraud serve as circumstantial evidence of fraudulent intent. DiLeo v. Commissioner, supra at 875. These badges of fraud include: (1) A pattern of consistent underreporting of income; (2) failure to cooperate with tax

authorities; (3) inadequate books and records; (4) concealing assets; (5) filing false documents; and (6) implausible or inconsistent explanations of behavior.  Spies v. United States, supra at 499; Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; DiLeo v. Commissioner, supra at 875.  While no single indicium is necessary or sufficient to find fraud, the existence of several of these factors is persuasive circumstantial evidence of fraudulent intent.  Petzoldt v. Commissioner, supra at 700.

Petitioner consistently understated his income by substantial amounts for the years 1990, 1991, and 1992.

Petitioner failed to cooperate with tax authorities. Petitioner's effort to prevent respondent from obtaining information from the H&R Block employee shows that he attempted to impede respondent's investigation and indicates that petitioner intended to evade taxes.  See Truesdell v. Commissioner, 89 T.C. 1280, 1303 (1987) (finding that the taxpayer's "interference with * * * [the Commissioner's] investigation is also indicative of his intent to conceal the diverted income and evade tax").  Also, as discussed supra, petitioner did not submit any books or records to respondent's agent during the course of the examination of his 1990, 1991, and 1992 income tax returns.

Petitioner maintained inadequate business records. As stated in the criminal proceeding, petitioner "did not keep many business records; according to his sons, he merely kept track of 'some things' by handwritten notes on scraps of paper." United States v. Hoover, 175 F.3d at 566. We find that petitioner's failure to maintain adequate business records supports a finding of fraud.

Petitioner devised a scheme to conceal his income and divert it to his children with the intent of avoiding income taxes. Petitioner instructed his customers to issue checks payable to his children. Petitioner attempted to disguise his farming income by diverting to his children farming receipts that were owed to petitioner. We find that this scheme of concealing his assets provides further evidence that petitioner attempted to avoid income taxes.

Although a criminal conviction under section 7206 is not dispositive, it provides probative evidence that the taxpayer intended to evade taxes. Wright v. Commissioner, 84 T.C. 636, 643-644 (1985). Petitioner was convicted of filing false Federal income tax returns in violation of section 7206 in 1990, 1991, and 1992. United States v. Hoover, 175 F.3d at 567. We also note that petitioner was convicted of making false statements on a student loan application.

Petitioner consistently understated income in 1990, 1991, and 1992, was convicted of filing false Federal income tax returns, made a false statement on a student loan application, interfered with respondent's investigation, failed to maintain books and records, and devised a scheme to conceal his income. We hold that respondent has proven by clear and convincing evidence that petitioner understated his income in 1990, 1991, and 1992 with the fraudulent intent to evade taxes.

V.  1990, 1991, and 1992--Statute of Limitations

Section 6501(c)(1) provides an exception to the general 3-year period of limitations.  "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time."  Sec. 6501(c)(1). Because we have found that petitioner filed fraudulent returns for 1990, 1991, and 1992, the statute of limitations does not bar the assessment of tax for these years.

VI.  Collection Proceeding

Petitioner argues that respondent's Appeals officer abused his discretion in sustaining the filing of a Federal tax lien and in issuing a notice of jeopardy levy.  Since we have found that the assessment of a deficiency for 1989 is barred by the statute of limitations, there is no deficiency to collect for 1989.

We sustain respondent's collection actions regarding 1990, 1991, and 1992. When the Commissioner determines that a taxpayer has a deficiency in tax, he is authorized to send a notice of that deficiency to the taxpayer. Sec. 6212. Section 6213(a) generally restricts when the Commissioner may assess a deficiency, make a levy determination, and begin or prosecute a collection action in a court proceeding. The Commissioner is generally prohibited from taking these actions until: (1) The notice of deficiency has been mailed to the taxpayer; (2) the 90-day period in which the taxpayer may petition the Tax Court has expired; and (3) if a petition has been filed with the Tax Court, the Tax Court's decision becomes final. Sec. 6213(a).

Section 6861 provides an exception to the restrictions on assessment and collection of deficiencies imposed by section 6213(a). Section 6861(a) provides that the Commissioner may immediately assess the deficiency when he believes that the assessment or collection of a deficiency will be jeopardized by delay. "A jeopardy assessment may be made before or after the mailing of the notice of deficiency provided by section 6212." Sec. 301.6861-1(a), Proced. & Admin. Regs. The Commissioner may make a jeopardy assessment or collection when the taxpayer is or appears to be: (1) Planning to depart from the United States, or conceal himself or herself; (2) planning to place his property beyond the reach of Commissioner by concealing it, by dissipating

it, or by transferring it to other persons; or (3) financially imperiled. Id.; sec. 1.6851-1(a)(1), Income Tax Regs.

Section 6330 provides taxpayers with notice and an opportunity for a hearing before the Commissioner may levy on any property or property right. Specifically, section 6330(a)(1) provides:

> No levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of their right to a hearing under this section before such a levy is made. Such notice shall be required only once for the taxable period to which the unpaid tax * * * relates.

Section 6330(a)(2) requires the Commissioner to issue a notice "not less than 30 days before the day of the first levy with respect to the amount of the unpaid tax for the taxable period."

Section 6330 does not apply if the Commissioner makes a finding, pursuant to the last sentence of section 6331(a), that the collection of tax is in jeopardy. Sec. 6330(f). The last sentence of section 6331(a) provides:

> If the Secretary makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.

In the context of jeopardy collection, the Commissioner must provide the taxpayer with a section 6330 hearing "within a reasonable period of time after the levy." Sec. 6330(f). We have jurisdiction under section 6330(d) to review respondent's

determination under section 6330(f) that use of a jeopardy levy was appropriate. <u>Dorn v. Commissioner</u>, 119 T.C. 356, 359 (2002).

Petitioner argues that the Court of Appeals for the Seventh Circuit held that respondent may not levy on his U.S. savings bonds. We disagree. In <u>United States v. Hoover</u>, 175 F.3d at 569, the court found that the U.S. District Court exceeded its authority by ordering petitioner to surrender U.S. savings bonds to pay his tax liability because "the Victim and Witness Protection Act * * * does not authorize restitution for Title 26 tax offenses." The Court of Appeals did not address whether respondent could make a jeopardy assessment and levy pursuant to sections 6330(f) and 6331(a); the court only addressed the U.S. District Court's authority under the Victim and Witness Protection Act.

Petitioner argues that respondent abused his discretion in determining that the collection of petitioner's deficiencies, interest, and penalties was in jeopardy. Again, we disagree with petitioner. Section 301.6861-1(a), Proced. & Admin. Regs., and section 1.6851-1(a)(1)(ii), Income Tax Regs., specifically provide that collection is in jeopardy when a taxpayer attempts to place assets beyond the Commissioner's reach by transferring the assets to another person. In petitioner's criminal proceeding, the U.S. District Court ordered petitioner to take all steps necessary to turn over to the United States 304 U.S.

savings bonds with face values of $1,000 each.  Petitioner failed to comply with the District Court's order and transferred 150 of those bonds to his son Michael Hoover.  Because petitioner had fraudulently attempted to evade his tax liability and had previously attempted to transfer his assets to his son in an attempt to elude a court order, we hold that respondent did not abuse his discretion when he concluded that the collection of taxes, interest, and penalties petitioner owed was in jeopardy.

VII.  Conclusion

The assessment of the determined deficiency for 1989 is barred by the 3-year statute of limitations.  Petitioner fraudulently understated his taxable income on his returns for 1990, 1991, and 1992 and is liable for fraud penalties pursuant to section 6663.  Section 6501(c), the fraud exception to the normal 3-year statute of limitations, applies so that the assessments for 1990, 1991, and 1992 are not barred by the statute of limitations.  The determination to uphold the jeopardy levy and the notice of Federal tax lien for the 1990, 1991, and 1992 tax liabilities was not an abuse of discretion.

Decision will be entered under Rule 155 in docket No. 15557-99, and an appropriate decision will be entered in docket No. 4590-00L.